Robert ROTONDO, Richard A. Butts, Lorenza Cobb, Norman Holmes, Willie L. Lawrence, George M. Anderson, Bobby Lee Pack, Nathaniel Giles, Collie E. Ward, Willie G. McCrea, Robert M. Richardson, Michael Morris, Johnny McDonald, Justin L. Burkett, William R. Johnson, Franklin Nelson, Sr., William H. Mills, Sr., Randy L. Petty, Dennis J. Altman, Willie Linen, and Michael Armstrong, Plaintiffs,

v.

CITY OF GEORGETOWN, SOUTH CAROLINA, Defendant.

Civ. A. No. 2:93–1980–18.

United States District Court,
D. South Carolina,
Charleston Division.

Nov. 22, 1994.

Timothy F. Rogers, Columbia, SC, Thomas A. Woodley, Gregory F. McGillivary, Mark F. Wilson, Washington, DC, for plaintiff.

Linda Peace Edwards, Stephen F. Savitz, Columbia, SC, for defendant.

## ORDER

NORTON, District Judge.

This matter is before the court on cross-motions for summary judgment. The case arises under the Fair Labor Standards Act (FLSA), 29 U.S.C.A. § 207(k) (Supp.1994). At issue is whether twenty-one current and former firefighters for the City of Georgetown, South Carolina, are due any overtime compensation under the Act.

### I. FACTS

In April 1985 in the landmark case *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), the United States Supreme Court held that the it was constitutional to apply the overtime provisions of the FLSA to state and municipal governments. *Id.* at 555–556, 105 S.Ct. at 1019–20. At that time, Georgetown firefighters were scheduled by the City of Georgetown ("City") to work "24/48" tours of duty whereby the firefighters worked for a twenty-four hour period, followed by forty-eight hours of off-duty time. In response to *Garcia,* on July 5, 1985, the Georgetown City Administrator, David W. Treme, issued letters to the currently employed firefighters [1] ("Group I") informing them that the City was increasing their work shift to twenty-four hours and fifteen minutes and further stating that the City had designated certain hours during the work shift as sleep and meal periods. Mr. Treme's letter stated that eight hours of each day would be considered sleep time, two hours would be considered meal time, and that sleep time and meal time would not be considered work time for the calculation of overtime pay. The letter also stated that "[t]he Department of Labor has always recognized that employees [on] such a schedule—regardless of their job or employer—are not entitled to have each hour in 24 considered an hour of work." Mr. Treme further notified the firefighters that they would receive a small pay raise. The Group I Plaintiffs had to sign the letter acknowledging its receipt and return it to the City. The City hired the remaining twelve Plaintiffs [2] ("Group II") at various times over the next eight years.

After the schedule change in July of 1985, most of the Group I firefighters questioned the new pay plan and complained to the Fire Chief. There is also evidence that some of the firefighters complained to their shift captains, and one Plaintiff testified at deposition that he had complained to a City Council member. However, most of the complaints were directed to superior fire fighting personnel within the walls of the fire station. No firefighter registered a complaint in writing to anyone at the station or to any city official. According to these Plaintiffs, most of their complaints were met with the answer that the new pay plan was "the law," and they had to accept the changes whether they liked them or not.

---

1. When this letter was issued, only nine of the Plaintiffs were employed by the City as firefighters. Those employed at that time were Anderson, Butts, Cobb, Holmes, Linen, McDonald, Mills, Pack, and Ward. For the ease of discussion, this group of Plaintiffs will be collectively referred to by this court as "Group I."

2. The twelve Plaintiffs hired after the July 5, 1985 changes include Altman, Armstrong, Burkett, Giles, Johnson, Lawrence, McCrea, Morris, Nelson, Petty, Richardson, and Rotondo. For ease of discussion, this court will collectively refer to these twelve Plaintiffs as "Group II."

In February 1993, the City modified its pay plan to be based on a twenty-one day work period in which sleep time would be included as work hours for the purposes of computing overtime, but meal periods would remain excluded from the firefighters' compensable work hours. Further, the meal time was reduced from two one hour periods to two forty-five minute periods per shift. Under this revised meal schedule, the firefighters were verbally directed by the Chief to eat in two shifts so that one shift would be relieved of answering the phone while the other shift ate their meal. Finally, under the February changes, the City began to include holidays and vacation time as work hours and noted that if the firefighters worked their regular schedule, the new plan would allow for a very small amount of overtime pay per twenty-one day period.

Plaintiffs filed a Motion for Partial Summary Judgment as to the issue of Defendant's liability under the FLSA for overtime compensation for all meal and sleep periods under both pay plans for all Plaintiffs. On the other hand, Defendant's Motion for Summary Judgment asserts that the City is entitled to judgment as a matter of law in that: (1) the pay plan adopted by the City in July 1985 is lawful and the City had the agreement of the firefighters to the pay plan; (2) the pay plan adopted by the City in February 1993 is lawful and the meal periods are bona fide; and (3) that Plaintiffs Anderson, Johnson, Pack, and Ward are exempt from the overtime provisions of the FLSA because they are administrative and/or executive employees. In addition to counsels' lengthy oral argument on October 24, 1994, both sides submitted voluminous briefs and exhibits.

This case concerns meal periods and sleep periods over an eight year span and involves two groups of Georgetown firefighters—those employed at the time of the July 1985 change and those hired after that change. Because this court believes there is some merit to the argument of each side, for the reasons discussed below, this court will (1) deny Defendant's Motion for Summary Judgment with respect to the sleep time of the nine Group I firefighters because this court cannot find as a matter of law that there was any implied agreement to exclude sleep time, (2) deny Defendant's Motion for Summary Judgment with respect to Plaintiffs Anderson, Johnson, Pack, and Ward because Defendant has waived its affirmative defense, (3) grant Defendant's Motion for Summary Judgment with respect to the sleep time of the twelve Group II Plaintiffs because this court finds that there was an implied agreement as a matter of law with respect to their sleep time exemptions, (4) grant Defendant's Motion for Summary Judgment in finding that the 1985 extension of the work day to comply with *Garcia* was lawful and further that the current twenty-four hour fifteen minute tour of duty is also lawful, (5) grant Plaintiff's Motion for Summary Judgment by finding that neither Group's meal periods were bona fide as required by the FLSA and therefore cannot be exempted, (6) deny Plaintiff's Motion for Summary Judgment with respect to the sleep time of the Group I firefighters because the court cannot find that there was not an implied agreement as a matter of law to exclude the sleep time.

## II. SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v.*

*CenTra, Inc.,* 947 F.2d 115, 119 (4th Cir. 1991).

*Emporia,* 741 F.Supp. 887, 888 (D.Kan.1990), *aff'd,* 948 F.2d 1529, 1539 (10th Cir.1991).

## III. FLSA LAW

The FLSA clearly requires employers to pay employees overtime for hours worked in excess of forty per week. 29 U.S.C.A. § 207(a). However, there are three possible exemptions for work time that are relevant to the firefighters in this case. First, the employer can exclude sleep time for firefighters on a tour of duty greater than twenty-four hours only if there is an express or implied agreement between the employee and employer to exclude the sleep time. Absent such an agreement, the sleep time is compensable. 29 C.F.R. § 553.222(c). Second, the employer can exclude meal time for firefighters on a tour of duty greater than twenty-four hours only if the meal time meets two conditions: (1) there is an express or implied agreement between the employee and employer to exclude the meal time and (2) the excluded meal time is a "bona fide meal period" in which the "employee must be completely relieved from duty for the purposes of eating regular meals." 29 C.F.R. §§ 553.223(d), 785.19, 785.22. Third, the employer can exclude overtime pay to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C.A. § 213(a)(1); *see* 29 C.F.R. §§ 541.1 to 541.3.

As a foundational matter, "[e]xemptions from or exceptions to the Act's requirements are to be narrowly construed against the employer asserting them." *Johnson v. City of Columbia,* 949 F.2d 127, 129–30 (4th Cir.1991) (quoting *Donovan v. Brown Equip. & Serv. Tools, Inc.,* 666 F.2d 148, 153 (5th Cir.1982)). Further, the burden is on the City to show by clear and affirmative evidence that it is entitled to the FLSA exception. *Id.* at 130; *Donovan v. United Video Inc.,* 725 F.2d 577, 581 (10th Cir.1984). Finally, the assertion of an exemption from the mandates of the FLSA is an affirmative defense that is waived if it is not specifically pleaded by a defendant. *Renfro v. City of*

## IV. ANALYSIS

Because this case involves three exemptions and two different groups of employees, this court will first consider the length of the tour of duty as it applies to all firefighters (both Groups I and II), then address the administrative exception, and lastly decide the sleep and meal exceptions as they pertain individually to Group I and Group II.

### A. The Extension of the Twenty–Four Hour Tour of Duty

It is undisputed that all firefighters involved in this case work a tour of duty of twenty-four hours and fifteen minutes. As a result of the City's extending the tour of duty by fifteen minutes, Plaintiffs allege that the City "purposefully and discriminatorily applied its policy of expanding plaintiffs' shifts and deducting sleep and meal time from the hours worked by the plaintiffs in order to avoid its statutory obligation to pay premium overtime compensation...." (Cmplt. ¶ 10). After *Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), a large number of municipalities increased firefighters' tours of duty to exceed twenty-four hours in order to qualify for the FLSA exceptions. The practice of increasing tours of duty solely to comply with the FLSA overtime requirements has been approved not only by the Department of Labor, but also by the Fourth Circuit. *See Holb v. City of Beaufort,* Nos. 91–2068, 92–1427, slip op. at 7, 1993 WL 219806 (4th Cir. June 22, 1993) (unpublished opinion, full text available on Westlaw);[3] *Bodie v. City of Columbia,* 934 F.2d 561, 563 (4th Cir.1991) (discussing a similar increase). Therefore, with respect to the Group I Plaintiffs, this court finds as a matter of law that the City's extension of their tour of duty by fifteen minutes was a lawful act and was not discriminatory. Additionally, with respect to the Group II Plaintiffs, for the reasoning above, this court further finds that the twen-

**3.** Although this court recognizes that unpublished opinions are not binding precedent, this court finds the *Holb* case extremely instructional on the law in this Circuit with respect to sleep and meal time exemptions under the FLSA for firefighters.

ty-four hour and fifteen minute tour of duty in place when they were hired and as it exists at the time of this lawsuit was also lawful.

## B. The "Administrative, Executive or Professional" Capacity Exemption

■ In its Motion for Summary Judgment, Defendant raises for the first time the defense that Plaintiffs Anderson, Johnson, Pack, and Ward are exempt from the overtime provisions of the FLSA as executive and/or administrative employees as defined by 29 C.F.R. § 541. The assertion of an exemption from the mandates of the FLSA is an affirmative defense that must be specifically pleaded by an employer or it is waived. *Renfro v. City of Emporia*, 741 F.Supp. 887, 888 (D.Kan.1990), *aff'd*, 948 F.2d 1529, 1539 (10th Cir.1991). Therefore, because Defendant had not specifically pleaded this affirmative defense for Plaintiffs Anderson, Johnson,[4] Pack, and Ward prior to its Motion for Summary Judgment, this court finds that Defendant has waived this defense.

## C. The Sleep and Meal Exemptions for the Group I Firefighters

■ 1. The Sleep Exemption—This court finds that neither Defendant nor the Group I Plaintiffs are entitled to summary judgment with respect to whether there was an implied agreement to exclude sleep time for these Plaintiffs. To exclude sleep time, the City must demonstrate that the firefighters either expressly or impliedly agreed to the exemption. Because, the City agrees that there was no express agreement, this court focuses exclusively on whether an implied agreement existed to exclude sleep hours.

The Fourth Circuit provided ample instruction on this issue in *Holb v. City of Beaufort* in which it summarized its holdings in two previously published firefighter FLSA cases, *Johnson v. City of Columbia*, 949 F.2d 127 (4th Cir.1991) and *Bodie v. City of Columbia*, 934 F.2d 561 (4th Cir.1991). In *Holb*, the court stated:

An employee's continuous employment is evidence of an implied agreement with the pay system of the employer. There is, however, no per se rule that continued employment conclusively establishes an agreement. Rather, the evidence in each case must be examined. Our decisions have made clear that we will not approve employer actions that place the employee in a situation of economic duress, but we also will not allow employees merely to grumble about the compensation scheme and then later spring a surprise attack on an employer who has tried to comply with the options that the FLSA provides.

*Holb*, slip op. at 10 (citing *Johnson*, 949 F.2d at 131–32, and *Bodie*, 934 F.2d at 564).

Plaintiffs argue that there could not have been any implied agreement or meeting of the minds with respect to the sleep exclusions because of the firefighters' complaints and the alleged "threats" made to them. On the other hand, Defendant asserts that Group I's continued acceptance of paychecks for over eight years and acceptance of various promotions during that time combined with Defendant's assertion that their complaints were "mere grumbling" are evidence of the existence of an implied agreement to exclude the sleep hours.

Although there is testimony in the record that the complaints of the firefighters were summarily dismissed by station superiors with "that's the law" answers, it is this court's opinion that such answers do not rise to the blatant economic duress experienced by the firefighters in *Johnson*. See *Johnson*, 949 F.2d at 131–32; see also *Lee v. Flightsafety Servs. Corp.*, 20 F.3d 428, 432–33 (11th Cir.1994) (comparing the threat of imminent discharge in *Johnson* with "hit the gate" and "take it or leave it" language and finding that such language did not amount to economic duress). Additionally, an important difference between the firefighters' complaints in *Johnson* and those in this case is that "Johnson formally protested the City's actions by writing a letter along with 35 other fire fighters," *Johnson*, 949 F.2d at 130, whereas in this case all complaints have been verbal

---

4. Of these four Plaintiffs, only firefighter Johnson is a member of Group II and is subject to this court's summary judgment ruling with respect to Group II's sleep time.

and almost all have been voiced only to other firefighters. It is undisputed that none of the firefighters made any written complaints or written inquiries to City management or elected officials. However, unlike the firefighter in *Bodie* who continued to accept his pay check for almost two years expressing no complaint whatsoever, *Bodie* 934 F.2d at 563, here there is evidence that the firefighters voiced some complaints and at least one of the Group I Plaintiffs stated in deposition that he verbally complained to a City Council member.

Defendant relies on several South Carolina cases to argue that, in spite of their protests, the Group I firefighters impliedly consented to changed conditions of employment by continuing to accept their pay checks. *See Facelli v. Southeast Marketing Co.*, 284 S.C. 449, 327 S.E.2d 338 (1985); *Matthews v. City of Greenwood*, 305 S.C. 267, 407 S.E.2d 668 (App.1991). However, those cases can be distinguished from the facts surrounding the Group I Plaintiffs in that those cases were both actions by former employees based on state contract law and neither involved implied agreements by current employees under the FLSA. It is clear in the Fourth Circuit that the continuance of employment alone is not conclusive of an implied agreement as these state contract cases hold, but is only evidence of an implied agreement under the terms of the FLSA. *Bodie*, 934 F.2d at 564 (citing *Rousseau v. Teledyne Movible Offshore, Inc.*, 805 F.2d 1245 (5th Cir.1986), *cert. denied*, 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987)). Therefore, Group I's continued acceptance of their pay checks must be balanced with numerous other factors to determine whether there was an implied agreement to exclude the sleep time. Because this court finds there are genuine issues of material fact relating to the existence of an implied agreement to exclude Group I's sleep time, this court denies the summary judgment motions of both parties with respect to this issue in that this issue is more proper for a jury to decide.

*2. The Meal Exemption*—This court finds as a matter of law that all meal time [5] for Group I Plaintiffs does not qualify as an exemption because the meal periods are not "bona fide" as required by the law. Defendant concedes that during the meal periods, the firefighters have been interrupted in the past and that during those periods, they still have job related responsibilities including answering the phone when it rings at the station. Additionally, Defendant acknowledges that the Plaintiffs are required to remain at the station during their meal time [6] and are always obligated to respond as firefighters to an incoming fire or rescue call. Clearly, the firefighters are hired to serve in their standby capacity, and they continue to so serve while eating their meals. The language of the regulation states:

a. Bona fide meal periods. Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee **must be completely relieved** from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. **The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.** For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

29 C.F.R. 785.19(a) (emphasis added).

There appear to be three tests used by federal courts to determine whether an employee is "relieved" of his duties during meals. *See Bagrowski v. Maryland Port Auth.*, 845 F.Supp. 1116 (D.Md.1994). First, the "predominant benefit test" looks to "whether the employee's meal time is spent

---

**5.** This includes the two hours of meal time between July 1985 and February 1993, and the one and a half hours of meal time subsequent to the February 1993 schedule changes.

**6.** This court recognizes that this fact alone is not dispositive of whether meal periods are bona fide. *See* 29 C.F.R. § 785.19(b) ("It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period.").

primarily for the employer's benefit." *Id.* at 1118 (citing *Kohlheim v. Glynn County,* 915 F.2d 1473, 1477 (11th Cir.1990); *Burgess v. Catawba County,* 805 F.Supp. 341, 346–47 (W.D.N.C.1992); *Wahl v. City of Wichita,* 725 F.Supp. 1133, 1144 (D.Kan.1989)). The second test is called "the completely relieved of duty" test which looks to "whether the employee is indeed **completely** free of any work-related tasks." *Id.* at 1118 (citing *Wahl,* 725 F.Supp. at 1143; *Nixon v. City of Junction City,* 707 F.Supp. 473 (D.Kan. 1988)). The third and most recently developed standard is whether the "plaintiffs are 'primarily engaged in work-related duties' during their meal breaks." *Id.* at 1118 (quoting *Lamon v. City of Shawnee,* 972 F.2d 1145, 1157 (10th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1414, 122 L.Ed.2d 785 (1993)). Under this standard, meal time for police officers and law enforcement personnel has been held exempted even when the officer remains on call. *Id.* at 1118–19. However, this court recognizes that there are inherent differences in the job of a firefighter and that of a law enforcement officer because law enforcement personnel, although remaining in uniform and tied to a radio, are usually free to accomplish personal tasks during their meal periods.

Regardless of which test is applied, this court believes *Johnson* controls the outcome of this issue because it appears that the Fourth Circuit Court of Appeals applies the "completely relieved of duty" test. After outlining the applicable regulations in *Johnson,* the Fourth Circuit stated: "A fire fighter like Johnson is not relieved of his duties during any time that might be designated 'meal time' by the City." *Johnson,* 949 F.2d at 129; *see also Donovan v. Bel–Loc Diner, Inc.,* 780 F.2d 1113, 1115 n. 1 (4th Cir.1985) (stating "[t]o qualify as a bona fide noncompensable break, the respite must be uninterrupted and at least thirty minutes in duration, and the employee must be completely relieved from duty"). Because all meal time, including the meal periods after the February 1993 changes, fails the "completely relieved from duty" test, it cannot be excluded by the City as a matter of law regardless of whether any implied agreement existed as to its exclusion. Therefore, as a matter of law,

this court finds that Defendant is liable to Group I for any overtime pay accumulated as a result of the meal time exemption applied since July 1985.

### D. The Sleep and Meal Exemptions for the Group II Firefighters

#### 1. The Sleep Exemption

 This court finds as a matter of law that an implied agreement existed between the City and the Group II firefighters to exempt their sleep time. Group II Plaintiffs were all hired after the 1985 changes went into effect, and they were aware of the salary and had the opportunity to discuss the terms of their employment prior to accepting the job. Numerous courts have drawn a clear distinction between employees working at the time FLSA changes are implemented by an employer and those accepting a job after the modified pay system is in effect. These courts hold that, in absence of misrepresentation by the employer, the after-hired employee's acceptance of a paycheck manifests the employee's acceptance of the exclusion. This is true in spite of any pre-employment lack of knowledge of the exemptions and in spite of any post-hired expressed objections once becoming aware of the exemptions. *See Ariens v. Olin Mathieson Chem. Corp.,* 382 F.2d 192 (6th Cir.1967); *Holb v. City of Beaufort,* Nos. 91–2068, 92–1427, slip op., 1993 WL 219806 (4th Cir. June 22, 1993) (unpublished opinion, full text available on Westlaw); *Harrison v. City of Clarksville,* 732 F.Supp. 810 (M.D.Tenn.1990). The court in *Harrison* clearly outlined this distinction as follows:

> [R]equiring employees to quit their jobs or to refuse their paychecks would enable employers to unilaterally change a longstanding employment agreement even though the FLSA requires mutuality. **The same concerns do not apply to employees who accept a job where a particular compensation system is already in effect.** In absence of subterfuge or misrepresentation on the part of the employer, employees cannot claim that the employer has altered the terms of their employment agreement. New hires have an opportuni-

ty before accepting employment to discover the terms of employment that are material to their decisions whether to take their jobs. Failure to discuss a particular term before accepting a position indicates either that the term was not material to the decision to accept the job, or that the term, though material, was simply overlooked. Where the parties discover the oversight shortly after hire, and the employee decides to continue in his employment and to accept his paycheck, the employee's actions manifest his acceptance of the originally overlooked term, even though he expresses his objection to the term. In other words, the employee has the same option before him when the oversight is discovered as he would have had were the matter discussed before he was hired: accept the disputed term by accepting employment, or look for employment elsewhere.

*Harrison,* 732 F.Supp. at 815. (emphasis added) (citations omitted) (quoted with approval by the Fourth Circuit in *Holb,* slip op. at 9).

Counsel for Plaintiffs admits that the Group II firefighters were informed of their annual salary and that they would be working twenty-four hour fifteen minute shifts. Additionally, if the Plaintiffs were not aware of the sleep exclusions when they negotiated the terms of their jobs, they became aware of the exclusion shortly after hire when they received their first paychecks and were able to express any objections to their supervisors. Similar to the firefighters in both *Ariens* and *Holb,* most of the newly hired Plaintiffs complained to their supervisors at the fire station once becoming aware of the sleep deduction,[7] but none has refused a subsequent paycheck. *See Holb,* slip op. at 9; *Ariens,* 382 F.2d at 194. Therefore, even if this term was overlooked during the original employment negotiations, the Group II firefighters manifested acceptance of that term by their continued acceptance of their paychecks.

Plaintiffs argue that to require them to "blithely quit their jobs after they have worked somewhere for several weeks and received career training" would ignore the reality of the work place and ignore the investment of the newly hired firefighters. Although the court in *Harrison* recognized that requiring long standing employees to refuse paychecks after the employer's implementation of FLSA schedule changes was indeed harsh and impractical, that court stated that such concerns do not apply to those employees hired after the system is in place. *Harrison,* 732 F.Supp. at 815.

Further, this court finds that the record is absent of any subterfuge or misrepresentation by Defendant to these Plaintiffs. If they were not aware of the exclusion during their individual employment negotiations, there is ample testimony in the record that the discussion about the exemptions occurred within the fire station every time a new employee was hired. Therefore, this court finds as a matter of law that the Group II employees agreed to the sleep time exclusions by their continued acceptance of their paychecks even after becoming aware of the sleep time exclusion.

### 2. The Meal Exemption

■ For the reasons stated above with respect to Group I's meal exemption, this court finds that Group II's meal hours are not exempted from the pay requirements of the FLSA because the periods were not bona fide. Unlike the sleep time requirement, for meal periods to be excluded from work hours, there must be both an agreement to do so and the periods must be bona fide. *See* 29 C.F.R. §§ 553.233(d), 785.19, 785.22. Although the Group II Plaintiffs may have impliedly agreed to the meal exclusion, those meals cannot qualify for the exemption because at no time, even after the February 1993 changes, were those meal periods bona

7. Plaintiffs Altman, Armstrong, and Petty admit in their individual responses to interrogatories as to not having complained at all about the pay plan. Apparently, Plaintiffs Armstrong and Altman also later accepted promotions. Clearly with respect to these three Plaintiffs, this court finds there was an implied agreement to exclude their sleep time from their pay. *See Bodie,* 934 F.2d at 563 (discussing the failure of firefighter Bodie to voice any complaints); *Holb,* slip op. at 5, 8 (discussing the lack of complaints by firefighter Thames).

fide under the "completely relieved of duty" test.

In addition to finding an implied agreement with respect to sleep time exclusions, both the *Harrison* Court and the Fourth Circuit in *Holb* found that continued acceptance of paychecks demonstrated the existence of an implied agreement to also exclude meal times. *Holb*, slip op. at 8; *Harrison*, 732 F.Supp. at 813. However, for reasons not apparent in either of those opinions, neither court addressed whether the meal periods met the second prong of the regulations in that the meal period must be bona fide to be exempted. This court finds that in spite of the existence of any implied agreement, the meal periods of the Group II employees from the date of their being hired by the City could not be excluded from compensable work hours. Therefore, to the extent, if any, that the addition of those meal hours adds to the overtime pay due to the Group II firefighters, this court finds the City liable as a matter of law for that amount of compensation.

### V. CONCLUSION

For the foregoing reasons this court finds the following as a matter of law: (1) The City's extension of the Group I's tour of duty by fifteen minutes was lawful. (2) The twenty four hour fifteen minute tour of duty currently in effect and under which the Group II fire fighters were hired is lawful. (3) The City is liable to both Group I and Group II firefighters for all meal time. (4) The City has waived the "administrative/executive employee" affirmative defense against Plaintiffs Anderson, Johnson, Pack, and Ward. (5) The Group II firefighters impliedly agreed to the sleep time exemption and therefore the city is not liable for that time.

Although this court finds entry of summary judgment on the above issues is appropriate, this court further finds that the determination as to whether Group I impliedly agreed to the sleep time exemption is a matter to be properly determined by a jury.

It is therefore

**ORDERED,** in accordance with the above conclusions,

That Defendant's Motion for Summary Judgment be **GRANTED IN PART and DENIED IN PART.**

That Plaintiffs' Motion for Partial Summary Judgment be **GRANTED IN PART and DENIED IN PART.**

**AND IT IS SO ORDERED.**