**Frank H. ADAMS, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 90–346C.

United States Court of Federal Claims.

June 28, 1996.

Ira M. Lechner, Washington, DC, for plaintiffs. Daniel M. Katz, and Nancy A. Donahue, Washington, DC, of counsel.

Mark A. Melnick, with whom were Assistant Attorney General Frank W. Hunger, David M. Cohen, and James M. Kinsella, Washington, DC, for defendant.

OPINION

BRUGGINK, Judge.

This is an action for overtime pay brought under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219 (1994). Pending is plaintiffs' motion for partial summary judgment and the Government's cross-motion for summary judgment. Plaintiffs allege that the Office of Personnel Management ("OPM") has wrongfully determined them to be exempt from the overtime pay provisions of the FLSA because they perform extensive supervisory functions. After briefing and oral argument, the court holds that plaintiffs are not entitled to overtime pay.

BACKGROUND

Plaintiffs are over two hundred civilian firefighters employed by the Veterans Administration and the Departments of the Air Force and Navy. Plaintiffs are on duty 72 hours a week as supervisory firefighters at the GS–7 through GS–9 level. Their duty time is spread over three twenty-four hour shifts per seven day administrative workweek. Each twenty-four hour shift includes periods, varying in length, in which plaintiffs perform the actual work described in their position descriptions, and additional hours in which they are in standby status, waiting to be called upon to supervise the fire department's response to an emergency.

What the parties both refer to as "actual" work is normally confined to an eight hour period. This "actual" work is the time when, in addition to responding to emergencies, the supervisory firefighters fulfill administrative responsibilities. The parties have stipulated that during a representative workweek, at least 80 percent of each plaintiff's "actual" work time, whenever it occurs, is spent performing supervisory or closely related work.

During the remaining sixteen hours of the plaintiffs' duty time they are in standby status. They are then at liberty to sleep, eat, read, or engage in other pastimes, so long as they remain on Government premises. The parties have stipulated that the plaintiffs perform the same activities during standby time as that done by non-supervisory firefighters. During their standby time, however, they may be called on to perform their "actual" supervisory work.

The parties have further stipulated that, in order to effectively and successfully carry out their responsibilities, supervising firefighters must be physically fit, and therefore must engage in physical training. This training normally takes place during standby hours. Although supervisory firefighters do not typically supervise other firefighters in physical training, the Government has included all time spent by plaintiffs during physical training as supervisory or closely related work for purposes of determining their overtime eligibility.

Plaintiffs are considered "on duty" during the entire twenty-four hour period. The pay they receive is compensation for all those hours, including time spent in standby status, during which they are required to remain at or within the confines of the station, holding themselves in readiness to perform "actual" work when the need arises. In addition to their base salaries, plaintiffs also currently receive standby premium pay pursuant to 5 U.S.C. § 5545(c)(1) (1994).

## THE REGULATORY FRAMEWORK

■ The Fair Labor Standards Act requires that employees of public agencies providing fire protection receive compensation at a rate not less than one and one-half times the regular rate for hours in excess of 216 hours in 28 days. 29 U.S.C. § 207(k) (1994).[1] This rule does not apply, however, to employees deemed "exempt" by the FLSA. In this instance, plaintiffs did not receive overtime pay because they were determined by OPM to be exempt because they are employed "in a bona fide executive ... capacity." *See* 29 U.S.C. § 213(a) (1994). The Government, as the employer, bears the burden of overcoming the presumption that the exemption does not apply. *Abundis v. United States,* 18 Cl.Ct. 657, 663 (1989).[2]

OPM has promulgated regulations which provide the framework to determine whether a particular federal employee is exempt from overtime coverage.[3] *See* 5 C.F.R. §§ 551.201–551.209 (1995).[4] The specific regulation at issue, the "Executive exemption criteria," which was the subject of several revisions during the late 1980's, is found at 5 C.F.R. § 551.204 (hereafter "section 551.204"). The current iteration of this section sets up two criteria for an employee to be designated as exempt. The first step, the "primary duty" test, states that to be exempt, an employee's primary duty must consist of being a supervisor. 5 C.F.R. § 551.204(a). The parties have stipulated that this half of the test is met for these plaintiffs. The second prerequisite is that firefighters at the GS–7 through GS–9 level "must spend 80 percent or more of the *worktime* in a representative workweek on supervisory and closely related work." 5 C.F.R. § 551.204(b) (emphasis supplied).

Prior to 1986, firefighters at the GS–7 through GS–9 levels were covered by the FLSA overtime provisions (non-exempt) even though they were classified as "supervisory" under the Supervisory Grade Evaluation Guide if they spent less than 80 percent of their worktime on supervisory and closely related work. Under this "80 percent rule," most firefighters at GS–7 through GS–9 qual-

---

1. This 216 hour cutoff was modified by FPM letter 551–20 to 212 hours per 28 day work period.

2. This court has stated, in *Adam v. United States,* that:

   Even OPM's predecessor, the Civil Service Commission, has instructed that: "[n]umerous judicial precedents have firmly established the principle[] that: ... [t]he burden of proof rests with the employer who asserts the exemption.... Thus, if there is a reasonable doubt as to whether an employee meets the criteria for exemption, the employee should be ruled nonexempt."

   26 Cl.Ct. 782, 786 (1992) (quoting Attachment to FPM Letter 551–7, at 11–12).

3. The FLSA grants OPM the authority to "administer" its requirements for all federal employees:

   Notwithstanding any other provision of this chapter, or any other law, the Director of the Office of Personnel Management is authorized to administer the provisions of this chapter with respect to any individual employed by the United States.... Nothing in this subsection shall be construed to affect the right of an employee to bring an action for unpaid minimum wages, or unpaid overtime compensation, and liquidated damages ...

   29 U.S.C. § 204(f) (1994).

4. All future citations to the Code of Federal Regulations (C.F.R.) are to the 1995 edition, unless otherwise noted.

ified for FLSA overtime because they spent less than 80 percent of their time in supervisory work. 52 Fed.Reg. 34,657 (1987).

In 1986, OPM removed the 80 percent rule for GS–7 through GS–9 employees and made the exemption determination based solely on whether the employee was considered "supervisory" or "managerial" under the Supervisory Grade–Evaluation Guide. This resulted in most firefighters below the GS–10 level losing their right to FLSA overtime pay. *Id.* The new regulation "significantly reduce[d] the total pay of most supervisory firefighters, thus causing recruitment, retention and pay structure problems." *Id.* To rectify this problem, OPM re-incorporated an 80 percent rule into section 551.204 in January, 1988, for firefighters at levels GS–7 through GS–9.

The denominator in the fraction implicit in this 80 percent calculation consists of "worktime." Much of the difference in the parties' analysis begins with a disagreement over the determination of that figure. The phrase "worktime" is not defined by statute, regulation or Federal Personnel Manual ("FPM") letter. Although no express guidance has been issued, OPM has consistently taken the position in ruling on individual administrative appeals by supervisory firefighters, that only the eight hours of "actual" work performed in a twenty-four hour shift constitute "worktime." The parties have stipulated that over 80 percent of the time in which the firefighters do "actual" work, they are performing supervisory functions. The result is that if, as the Government asserts, the denominator of the fraction consists only of the eight hours of "actual" work, the plaintiffs are exempt from entitlement to FLSA overtime pay.

Plaintiffs, on the other hand, assert that the denominator consists of the entire twenty-four hour shift. They further contend that the numerator—the amount of supervisory work—does not include standby time and time spent sleeping. The resulting ratio, according to plaintiffs, produces a figure well below the 80 percent required by section 551.204 to make them exempt. This argu-

ment highlights the second difference in the parties' positions. The Government argues that even if the plaintiffs are correct that "worktime" consists of the entire twenty-four hour shift, the 80 percent rule is still satisfied in that most or all of the sleep and standby periods constitute supervisory or closely related activity. This position is expressed in legal argument here. It has not been the subject of any regulations nor has it been expressed in the form of an FPM Letter.

## DISCUSSION

### 1. *What is "worktime?"*

■■■ Plaintiffs allege that OPM's interpretation of "worktime" is arbitrary and capricious, and thus should be vacated by this court. In addition, plaintiffs contend that even if this court determines that OPM's interpretation is reasonable, the regulation, as interpreted, is invalid because it is inconsistent with the regulations of the Department of Labor ("DOL"), the agency given primary responsibility for administering the FLSA. Because the applicability of an FLSA exception is an affirmative defense, each separate element must be affirmatively proven by the defendant. *Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974); *Walling v. General Indus. Co.,* 330 U.S. 545, 547–48, 67 S.Ct. 883, 883–84, 91 L.Ed. 1088 (1947). Furthermore, these exemptions are to be interpreted narrowly. *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960) (utilized in context of applying executive and administrative exemptions to employees of the Uniformed Division of the United States Secret Service); *see* 5 C.F.R. § 551.202(a) ("[E]xemption criteria shall be narrowly construed to apply only to those employees who are clearly within the terms and spirit of the exemption.").

Before 1974, the FLSA did not apply to federal employees. Federal employees' overtime entitlement was governed solely by civil service statutes administered by OPM's predecessor, the Civil Service Commission.[5] In

---

**5.** The Office of Personnel Management was established by section 201 of the Civil Service

Reform Act of 1978, Pub.L. No. 95–454, 92 Stat.

1974, Congress amended the FLSA to include federal employees. Fair Labor Standards Amendments of 1974, Pub.L. No. 93–259, 88 Stat. 55 (1974) (pertinent part codified at 29 U.S.C. § 203(e)(2)(A) (1982)). Congress granted the Commission, now OPM, authority to administer the FLSA for federal employees. 29 U.S.C. § 204(f) (1994). However, the legislative history indicates that in resolving any conflicts between the FLSA and the Commission's previous statutes, "the Commission will administer the [FLSA] in such a manner as to assure consistency with the meaning, scope, and application established by the rulings, regulations, interpretations, and opinions of the Secretary of Labor which are applicable in other sectors of the economy." H.R.Rep. No. 913, 93d Cong., 2d Sess. 28 (1974), *reprinted in* 1974 U.S.C.C.A.N. (88 Stat.) 2837. Emphasizing this point, the House Report continues, "[t]he provisions of the [FLSA amendments] would leave the premium pay provisions of Title 5, United States Code, in effect *to the extent that they are not inconsistent with the Fair Labor Standards Act.*" *Id.* (emphasis supplied).

Recognizing this legislative intent, the courts have concluded that "OPM is ... obliged to exercise its administrative authority in a manner that is consistent with the Secretary of Labor's implementation of the FLSA." *American Fed'n of Gov't Employees v. Office of Personnel Management,* 821 F.2d 761, 770 (D.C.Cir.1987) (hereafter *AFGE*); *see Riggs v. United States,* 21 Cl.Ct. 664, 681 (1990) (quoting House Report, and stating, "it was Congress' intention both that OPM have substantive rule-making authority, and that it conform federal FLSA practice with that in the private sector.").[6] As this court has previously stated, however, "[i]t would be inappropriate ... to elevate [this] statement in the committee report to

an ironclad rule barring any inconsistency." *Riggs,* 21 Cl.Ct. at 681. Thus, while the regulations may not create a hard-and-fast requirement establishing a specific inconsistency, the systems need not be identical to avoid conflict. *AFGE,* 821 F.2d at 771 n. 11; *Riggs,* 21 Cl.Ct. at 681. Therefore, in order to determine whether OPM has correctly applied the FLSA, its determinations must be compared to the standards established by DOL.

There is no specific statutory provenance for the 80 percent rule. Title 29 merely creates the professional exemption and gives DOL the authority to develop implementing regulations. 29 U.S.C. § 213(a)(1). The relevant DOL regulation is found at 29 C.F.R. § 541.1. The portion comparable to section 204 of the OPM regulations states:

> The term *employee employed in a bona fide executive * * * capacity* in section 13(a)(1) of the Act shall mean any employee: ... (e) who does not devote more than 20 percent ... of his hours of work in the workweek to activities which are not directly and closely related to the performance of work described in paragraphs (a) through (d) of this section....

29 C.F.R. § 541.1 (emphasis in original). The language in the DOL regulation is thus somewhat different than that of section 204. The OPM regulation refers to "worktime in a representative workweek." The word "worktime" does not appear, however, in the DOL regulation. Instead, the DOL regulation uses the phrase "hours of work in the workweek." Moreover, DOL limits the potential application of the exemption to employees who earn more than $250 per week. There is no comparable limitation in the OPM regulations.

---

1111 (codified in scattered sections within title 5 of the United States Code).

**6.** It should be noted, that the exemption statute at issue in this case, as in *AFGE,* specifically grants authority to the Secretary of Labor to give definition to the general terms of the provision. In pertinent part, it states:

(a) The provisions of sections 206 ... and 207 of this title shall not apply with respect to— (1) any employee employed in a bona fide executive, administrative, or professional capacity, ... or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary ...)....

Although the term "worktime" does appear elsewhere in the DOL regulations,[7] it is undefined. DOL has, however, enacted a number of regulations generally applicable to the determination of how many hours an employee works for purposes of calculating overtime. It is apparent from DOL's inclusion of the term "worktime" at various points in the regulations that the term is not used differently from "hours of work" or "duty time." For example, at 29 C.F.R. § 778.223, the following direction is given:

Under the Act an employee must be compensated for all hours worked. As a general rule the term "hours worked" will include: (a) All time during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace and (b) all time during which an employee is suffered or permitted to work whether or not he is required to do so. Thus working time is not limited to the hours spent in active productive labor, but includes time given by the employee to the employer even though part of the time may be spent in idleness....

*Id.* "Hours worked" and the definition of "duty time" are also dealt with in 29 C.F.R. part 785. There, DOL makes it clear that "duty time" includes standby time: "The time is *worktime* even though the employee is allowed to leave the premises or jobsite during such periods of inactivity.... [The time] belongs to and is controlled by the employer...." 29 C.F.R. § 785.15 (emphasis supplied).

Similarly, at section 785.11, DOL provides a definition of sorts for "work time," a phrase that differs from OPM's term only by including an extra space: "Work not requested but suffered or permitted is work time." 29 C.F.R. § 785.11. OPM has also developed comparable regulations which have the effect, not only of compensating standby time, but of including it in the determination of premium pay. *See* 5 C.F.R. §§ 550.143, 550.144, 551.431.[8]

DOL makes it clear that there is a link between hours for which an employee must receive compensation, and calculating the number of hours an employee has worked in order to determine overtime eligibility. At 29 C.F.R. § 778.315, DOL instructs: "In determining the number of hours for which overtime compensation is due, all hours worked (see § 778.223) by an employee for an employer in a particular workweek must be counted." The cross reference to section 778.223, "Pay for non-productive hours distinguished," confirms that standby time is included in DOL's calculus for overtime purposes.

There is no question, then, that DOL uses the terms "duty time", "hours worked", "worktime", "work time" and "working time" interchangeably for purposes of determining the total number of hours worked and for overtime purposes. *See also* 29 C.F.R. § 778.319 ("hours worked" and "working time"); 29 C.F.R. § 785.21 ("duty time" equivalent to "worktime").[9] Under the DOL regulations, therefore, the fact that an employee is not engaged in "actual" work during standby time is immaterial to whether he is to be paid at overtime rates. The employee is entitled to overtime pay.

In its reply brief, the Government states that "worktime," the word OPM chose to use

29 U.S.C. § 213(a)(1).

7. *See, e.g.,* 29 C.F.R. §§ 550.1(b), 551.5(b), 785.11, 785.15, 785.19(a).

8. Court decisions are to the same effect. *See Riggs v. United States*, 21 Cl.Ct. 664, 669 (1990) (stating " 'workweek' contemplated in section 7a of the FLSA includes all time during which an employee is necessarily required to be on the employer's premises on duty or at a prescribed work place.") (citing *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 690–91, 66 S.Ct. 1187, 1193–94, 90 L.Ed. 1515 (1946)); *Thomas v. County of Fairfax, VA*, 758 F.Supp. 353, 361 (E.D.Va.1991) ("Supreme Court precedent makes clear that all hours an employee is required to give the employer constitute 'hours worked' regardless of whether any physical exertion takes place.").

9. 29 C.F.R. § 778.319 provides, in part, as follows:

In some contracts provision is made for payment for certain hours, which constitute working time under the Act, coupled with a provision that these hours will not be counted as working time. Such a provision is a nullity. If the hours in question are hours worked, they must be counted as such in determining whether more than the applicable maximum hours have been worked in the workweek.

in its overtime regulation, "could mean a variety of different things. It could mean what plaintiffs claim it means. It could relate only to time spent performing the actual work of an employee's position description, or it could mean something else." From this existential scenario, the Government concludes that the court should defer to OPM's interpretation. The court declines to do so.

OPM has not defined the term "worktime." Instead, the Government deduces an apparent but unexpressed intent to distinguish "worktime" from "hours of work," which it concedes includes standby time, in the fact that OPM used the former phrase rather than the latter in section 551.204. That intent is too subtle for the court. If OPM had wished to distinguish the term, particularly in light of the fact that DOL uses the terms interchangeably, it could have done so by defining it, instead of continuing the promiscuous proliferation of apparently similar but undefined terms. The court is entitled to assume, in the absence of definitions, that similar terms are used to mean similar things, and that OPM would not depart from DOL practice without calling attention to that fact.

■ The Government's defense of OPM's practice amounts to no more than a retreat to the principle of deference: "Ordinarily an agency's interpretation of its own rules is to be accorded substantial deference." *McLean Hosp. Corp. v. United States,* 26 Cl.Ct. 1144, 1149 (1992) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)); *see Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, *reh'g denied,* 380 U.S. 989, 85 S.Ct. 1325, 14 L.Ed.2d 283 (1965). Thus, the Government asserts, even if this court were to disagree with the decision of OPM, such a decision should be upheld so long as it is reasonable. The court agrees, as it must, with this general principle. As the Supreme Court and the Third Circuit have stated, however:

> A reviewing court may not simply abdicate its responsibility by mumbling an indiscriminate litany of cases that extends "great deference to administrative conclusions." There is more to the judicial role.

> "Reviewing courts are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute."

*Hi–Craft Clothing Co. v. NLRB,* 660 F.2d 910, 914 (3d Cir.1981) (quoting *NLRB v. Brown,* 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965)). This is particularly the case here, because OPM's interpretation of the FLSA is required to be consistent with DOL's interpretation. The court is satisfied that OPM's application of section 551.204 is inconsistent with the intent of the overtime pay provisions. The best evidence of that intent is found in the DOL regulations, and the Government has not justified a contrary practice for federal employees. The court concludes that the term "worktime" in section 551.204 does not refer only to "actual" work. Accordingly, OPM's contrary interpretation is invalid. "Worktime" within the exemption provision includes the entire twenty-four hour on-duty period.

2. *Are plaintiffs doing "actual" work during standby time?*

■ Having concluded that the entire twenty-four hour shift counts toward calculating overtime, the question remains, how should the hours in that shift be characterized? OPM's exemption regulations provide that, to be exempt, a supervisor must spend more than 80 percent of his worktime on "supervisory and closely related work." 5 C.F.R. § 551.204(b). The parties agree that more than eighty percent of the plaintiffs' "actual" worktime is supervisory in nature. They disagree, however, on whether standby time is either supervisory work or work "closely related" to the firefighters' supervisory roles.

OPM's interpretation of plaintiffs' standby time is on solid ground here because of the inclusion of the words "closely related work." The same concept appears in the DOL regulations. 29 C.F.R. § 541.1(e) ("directly and closely related to the performance of [supervisory] work"). OPM for its part has not adopted regulations directly on point. Instead it has issued guidance in FPM Letter

551–7, which provides, in relevant part: "The basic test for identifying closely related work is whether or not the work contributes to the effective supervision of subordinate workers, or the smooth functioning of the unit supervised, or both." FPM Ltr. No. 551–7, at Attach. B.1.e (July 1, 1975).

■ The language in the FPM letter, as well as the examples which follow, were drawn from the DOL regulations. DOL has provided examples of work which it either considers or does not consider to be "directly and closely related" to supervisory work. 29 C.F.R. § 541.108.[10] There is no general definition, and no example in either the OPM letter or the DOL regulations that cover the present circumstances. At least one general principle seems to emerge from the examples, however. A supervisor does not become non-exempt merely by doing tasks which are incidental to his main work, even if non-supervisory workers might perform them as well. The question is whether a supervisor engages in those tasks because he is a supervisor.

Plaintiffs focus on the fact that, during standby time, they are engaged in the same physical activities as their subordinates: eating, sleeping, recreation, or exercise. They point to 29 C.F.R. § 541.115(b), where the following appears: "Clearly, the work of the same nature as that performed by the employees' subordinates must be counted as nonexempt work and if the amount of such work performed is substantial [ more than 20% ] the exemption does not apply." *Id.* To the same effect is the following: Nonexempt work is easily identifiable where, as in the usual case, it consists of work of the same nature as that performed by the nonexempt

subordinates of the "executive." 29 C.F.R. § 541.111(b). Therefore, plaintiffs argue, because their work is of the same nature as their subordinates work, they are non-exempt.

The Government takes the position that the sixteen hours of standby time are closely related to supervisory work because the entire purpose of plaintiffs' presence is to be available to supervise others in the event of an emergency. This function cannot be served by the presence of subordinates. The Government attempts to utilize, by analogy, the following example presented in the DOL regulations:

(f) Watching machines is another duty which may be exempt when performed by a supervisor under proper circumstances. Obviously the mere watching of machines in operation cannot be considered exempt work where, as in certain industries in which the machinery is largely automatic, it is an ordinary production function. Thus, an employee who watches machines for the purpose of making repairs or adjustments is performing nonexempt work. On the other hand, a supervisor who watches the operation of the machinery in his department in the sense that he "keeps an eye out for trouble" is performing work which is directly and closely related to his managerial responsibilities. Making an occasional adjustment under such circumstances is also exempt work.

29 C.F.R. § 541.108(f). Defendant contends that the function of "waiting and watching" for an emergency is analogous to "watching" a machine. The court believes the Government's ultimate conclusion is correct, but not because of the analogy to watching a ma-

10. Subsection (a) gives the rationale for including closely related work within the embrace of supervisory time:

(a) This phrase ["closely related"] brings within the category of exempt work not only the actual management of the department and the supervision of the employees therein, but also activities which are closely associated with the performance of the duties involved in such managerial and supervisory functions or responsibilities. The supervision of employees and the management of a department include a great many directly and closely related tasks which are different from the work performed

by subordinates and are commonly performed by supervisors because they are helpful in supervising the employees or contribute to the smooth functioning of the department for which they are responsible. Frequently such exempt work is of a kind which in establishments that are organized differently or which are larger and have greater specialization of function, may be performed by a nonexempt employee hired especially for that purpose. Illustration will serve to make clear the meaning to be given to the phrase "directly and closely related."

29 C.F.R. § 541.108(a).

chine. The DOL example suggests work which is more active than that which the plaintiffs are engaged in during their off time. One cannot sleep and watch a machine for breakdowns. If standby time is exempt, it is not because the plaintiffs are "watching" for an emergency. They do not have to "do" anything in their standby time.

The difficulty in the present facts is that the court is forced to choose between focusing on what plaintiffs physically do, which appears to be identical to their subordinates' activities, and why they do what they do. Either choice creates the appearance of anomalous results. During oral argument, plaintiffs conceded that if their construction were correct, as a practical matter, no supervisor who worked the type of shifts plaintiffs work would ever be exempt from overtime coverage. Sixteen hours of standby time will always be more than twenty percent of the total hours worked.

Opting for the Government's position, however, gives the appearance of collapsing the two-part test for exemption into a primary duty test. Cf. *Donovan v. Burger King Corp.*, 672 F.2d 221, 228 (1st Cir.1982) (refusing to accept defendant's interpretation of a similar overtime exemption provision, stating that its interpretation would eviscerate the distinction between the percentage requirement and the primary duty requirement and make it surplusage). The problem in both instances is that sixteen hours of standby time cannot be evaluated on an hour-by-hour basis. The argument for treating it as closely related to supervisory work is that it takes on its character by association to plaintiffs' activities when they perform "actual" work. On the other hand, if it is non-supervisory time, it is because it takes on its character by association with what non-supervisory workers are doing or not doing during off time. Standby time, of the type at issue here, is thus, by its very nature, either closely related to supervisory time, or it is not.[11] And, because of the size of that block of time, that characterization controls the outcome.

The court is satisfied that the difference between the parties' positions is that, in defendant's case, the anomaly is only apparent, whereas in plaintiffs' case, it is real. The reason that the anomaly is only apparent in defendant's case is because the court does not accept the argument that plaintiffs' standby time is not "work" for purposes of determining whether the exemption applies.

Plaintiffs, as well as their subordinates, serve a function simply by being on premises in the event of an emergency. As other courts have found, "[i]t is the nature of a firefighter's work to be ready and alert for emergencies, and the on-call time require[s] them to perform the same activities as their on duty time—waiting prepared for emergencies." *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 809 (11th Cir.1992). As the Supreme Court held in *Armour & Co. v. Wantock:* "Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer." 323 U.S. 126, 132–33, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944) (stating that when firefighters are on rotating twenty-four hour shifts, their idle time was considered "working time"), *reh'g denied,* 323 U.S. 818, 65 S.Ct. 427, 89 L.Ed. 649 (1945); *see Skidmore v. Swift & Co.,* 323 U.S. 134, 137, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944) (companion case); *see also General Elec. Co. v. Porter,* 208 F.2d 805, 812–15 (9th Cir.1953), *cert. denied,* 347 U.S. 975, 74 S.Ct. 787, 98 L.Ed. 1115 (1954); *Glenn L. Martin Nebraska Co. v. Culkin,* 197 F.2d 981, 984–85 (8th Cir.), *cert. denied,* 344 U.S. 866, 73 S.Ct. 108, 97 L.Ed. 671 (1952); *Rotondo v. City of Georgetown, S.C.,* 869 F.Supp. 369, 375 (D.S.C.1994). John Milton observed much the same thing more than three hundred years ago when he stated: "those also serve, who only stand and wait." Sonnet 19 *The Complete Poetry of John Milton* (Doubleday & Co. Garden City, N.Y. 1971).

---

11. There is no point, for example, in undertaking the analysis invited by defendant of whether training time is closely related to supervisory time. Even if there were some reason to treat it differently than other standby time, there is not enough of it to make any difference to the outcome.

Moreover, as plaintiffs concede, the reason they are on the premises during standby time is to be prepared to respond *in their supervisory capacity*, or to be more exact, to perform the same work they would perform if responding to an emergency during the normal eight-hour "actual" work period. A supervisor and his subordinate are in fact serving different functions by being available in a standby capacity. Plaintiffs' utility as supervisors is inchoate during sleep, for example, but their potentiality is different from that of a sleeping subordinate. One would not wake up a subordinate if the emergency called for a supervisor. It is *who* they are that gives plaintiffs their utility during standby time. There is no question that, in the words of the FPM letter, plaintiffs' presence during standby time contributes to the "smooth functioning of the unit supervised." *See* FPM Ltr. No. 551–7, at Attach. B.1.e (July 1, 1975).

Plainly standby time is work for purposes of determining the amount of hours for which plaintiffs must be compensated. The court has also held, above, that it constitutes worktime for purposes of determining eligibility for overtime pay. If plaintiffs are working during standby time, the question is, what work are they doing by simply standing by? The answer has to be, their "work" is simply to be present, so that, in the event of an emergency, they can be activated, *in their supervisory capacity*, to respond to the emergency. Their "doing" consists in "being." That work cannot be performed by non-supervisory firefighters. Their presence accomplishes a different function.

As the DOL regulations suggest, the fact that the same activities are performed by either a supervisor or a subordinate is not determinative. What is determinative is why plaintiffs do what they do. The fact that they are on standby, waiting to perform supervisory functions, distinguishes the present facts from circumstances in which nominally supervisory employees are in fact really working foremen. The DOL regulations explicitly state that the real purpose of the "exclusionary language placing a limitation on the amount of nonexempt work is to distinguish between the bona fide executive and 'working' foreman or 'working' supervisor who regularly performs production work or other work which is unrelated or only remotely related to his supervisory activities." 29 C.F.R. § 541.115(a). The production work performed by such working foremen has the primary function of achieving production and only secondarily to provide oversight to fellow employees. As plaintiffs concede, they are not working foremen. Standby time for firefighters is different in character from a supervisor working on an assembly line with subordinates.

The court concludes that standby time should take on, for overtime pay purposes, the same character as "actual" worktime, and in the same proportions. The determination of whether plaintiffs qualify for overtime, in other words, should not be affected by the inclusion of standby time into the 80 percent calculation. In view of the fact that more than eighty percent of these plaintiffs' actual duty time is spent on supervisory or closely related work, OPM's treatment of them as exempt from overtime pay provisions is not inconsistent with the FLSA.

One final point remains. Plaintiffs contend that the result here flies in the face of OPM's expressed expectations when the change in section 551.204 was made in 1988. OPM stated: "This final rule is expected to result in determinations that most of these employees [firefighters GS–7 through GS–9 levels] are nonexempt under the FLSA (covered by FLSA overtime provisions)." 53 Fed.Reg. 1331, (January 19, 1988). Plaintiffs point to themselves as evidence of the fact that this expectation has been thwarted: "OPM adopted an interpretation of 'worktime' ... which causes the exemption of the very employees for whose protection the 80–20 rule was reinstated." Pl. Brief of August 10, 1995.

Because neither side presented any proposed finding of fact with respect to actual experience under the new regulation, during oral argument, the court asked the parties to attempt to agree on what has occurred since implementation. As an attachment to its supplemental briefing, defendant furnished information to the following effect: before the new regulation, the experience at the

three agencies involved (the VA, the Air Force, and the Navy) was that, respectively 13.2 percent, 6 percent, and 23.7 percent of supervisory firefighters collected overtime pay. Def. Brief of May 14, 1996. After the new regulation went into effect, the percentages changed dramatically, to 87.7 percent, 70 percent, and 93.5 percent. *Id.* In their response, the plaintiffs refused to stipulate to these figures and urged the court to ignore them. Plaintiffs contend that they are incomplete, prejudicial, and more important, irrelevant, stating: "Plaintiffs are entitled to an *independent* review of their FLSA status, *irrespective* of the FLSA status of others unrelated to this action, and *regardless* of whether the changes that were made to 5 C.F.R. § 551.204(b) in 1988 resulted ... in determinations that most GS–7, 8 and 9 firefighters are non-exempt under the FLSA." Pl. Brief of May 14, 1996 (emphasis in original).

The court will take the plaintiffs at their word and will not consider the data. The Government did not propose findings of fact in connection with this information, and plaintiffs cannot be forced to stipulate to mere attachments to a brief. The court notes, however, that there is thus no evidence from which the court can conclude that the overall intent of the change in 1988 has been thwarted.

## CONCLUSION

Defendant has borne its burden of proving that the individual plaintiffs have been properly treated as exempt from the overtime pay provisions of the FLSA. Accordingly, plaintiffs' motion for partial summary judgment is denied, and defendant's motion is granted. The Clerk is directed to enter judgment for the defendant. No costs.