Rowdy **ADAMS, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 96–93.**

United States Court of Federal Claims.

Jan. 30, 1998.

Everett L. Bobbitt, argued, San Diego, CA, for plaintiffs. With him on the briefs was Sanford A. Toyen.

Agnes M. Brown, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, argued, Washington, DC, for defendant. With her on the briefs were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director.

## OPINION

BRUGGINK, Judge.

This overtime pay dispute is before the court on the parties' cross-motions for summary judgment. The motions have been fully briefed and argued, and are ready for disposition. For the reasons set forth below, both motions are denied.

## BACKGROUND

Plaintiffs are or were approximately 300 "Supervisory Border Patrol Agents" and "Supervisory Aircraft Pilots" employed by the U.S. Border Patrol at grades ranging from GS–11 to GS–14.[1] They worked an unknown amount of overtime but were not paid for it because defendant considers "Supervisory Border Patrol Agents" and "Supervisory Aircraft Pilots" to be exempt from the Fair Labor Standard Act's overtime pay requirements because they are "executives."

The Fair Labor Standards Act ("FLSA"), 29 U.S.C.A. §§ 201–219 (West Supp.1997),

---

1. In its First Amended Answer, the government denied that plaintiffs number 2, 10, 17, 19, 26, 51,52, 59, 60, 66, 83, 90, 96, 101, 147, 176, 181, 183, 195, 197, 209, 215, 216, 218, 223, 224, 253, 258, 282, 319, 326, 334, 343, 347, 361, 362, and 363 were "Supervisors" employed by the Border Patrol. In addition, the court notes that plaintiffs number 2, 33, 83, 101, and 147 were separately dismissed by prior orders. Also, according to the complaint, some plaintiffs were non-supervisory "Aircraft Pilots." It is unclear at present whether the government considers "Aircraft Pilots" to be exempt employees. Finally, there is confusion in the pleadings as to the status of Mr. Norbert Gomez, who has submitted a declaration in support of his claims, but who is not formally named in the caption as a plaintiff. The court cannot rule on his claims until the complaint has been amended to include him, and leave to do so is hereby granted.

requires an employer, including the federal government, to compensate an employee for overtime work at a rate of at least one-and-one-half times the employee's regular rate of pay. *Id.* § 207(a). However, "bona fide executive, administrative, or professional" employees are exempt from the FLSA's overtime provisions. *Id.* § 213(a). The Department of Labor ("DoL") is primarily responsible for administering FLSA. *See id.* § 204. But in the case of most federal employees, including plaintiffs, the statute is administered by the Office of Personnel Management ("OPM"). *See id.* §§ 204(f), 213(a).

Plaintiffs maintain that if DoL regulations were applied to them instead of OPM regulations, they would be considered exempt from FLSA's overtime pay requirements. In order for a position to be exempt under DoL regulations defining executives, an employee must, among other things, be paid on a salary basis. *See* 29 C.F.R. pt. 541 (1997).[2] This means the employee must receive "on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a). The salary-basis test is further refined to permit certain penalty deductions from pay as consistent with salaried employment, but disallow others. Consistent with salaried status, employees may be suspended without pay for "infractions of safety rules of major significance," 29 C.F.R. § 541.118(a)(5) ("disciplinary deduction rule"), but not for anything other than violating a major safety rule. *See Auer v. Robbins*, 519 U.S. 452, ——, 117 S.Ct. 905, 909,

137 L.Ed.2d 79 (1997). Thus, DoL's disciplinary deduction rule forbids piecemeal pay deductions from salary for other than major safety violations.

The record here shows that the Border Patrol has suspended, or proposed suspensions for, several plaintiffs for a variety of non-safety offenses, such as losing a pager, failing to exercise supervisory review of reports, inappropriate comments to a female subordinate employee, taking home a service vehicle, and making unscheduled shift changes. In addition, the government concedes that an employee classified as a "Supervisory Border Patrol Agent" or a "Supervisory Aircraft Pilot" can be suspended for non-safety rule violations, such as unhygienic personal appearance. Plaintiffs, in short, offer substantial evidence that they are at risk for suspension for non-safety violations. They therefore argue they are entitled to overtime pay on the following reasoning: (1) their entitlement to overtime pay should be assessed under DoL, rather than OPM, regulations; (2) DoL regulations require executive employees to meet the salary-basis test in order to qualify for exempt status; and (3) they do not meet the salary-basis test because they face the realistic possibility of salary reduction of less than a full pay period (i.e., suspensions) for reasons other than major safety violations.

The government's response is that plaintiffs fall under OPM's jurisdiction, not DoL's, and that OPM regulations do not contain a salary-basis test or a disciplinary-deduction rule. Instead, OPM defines the executive exemption by focusing on the nature of the employee's job. *See* 5 C.F.R. § 551.204 (1997).[3] According to the government,

---

**2.** The DoL regulations are lengthy and detailed. Subpart A of the regulations, the "General Regulations" define "executive employee" by reference to six criteria. These are: (a) primary management duties, (b) supervisory powers over others' work, (c) hiring/firing authority, (d) regular exercise of discretion, (e) limited time performing work other than that described in (a)-(d), and (f) compensation based on a minimum salary. *See* 29 C.F.R. § 541.1 (1997). Subpart B of the regulation describes how to interpret these six criteria. How to evaluate criterion (f) is explained by the salary-basis test set forth at 29 C.F.R. § 541.118 (1997), and quoted in pertinent part in the text.

**3.** The OPM regulations are more general than the DoL regulations. "Executive employee" is defined as a "supervisor, foreman, or manager who manages a Federal agency or any subdivision thereof ... and regularly and customarily directs the work of at least three subordinate employees...." 5 C.F.R. § 551.204 (1997). The other criteria OPM uses to define "executive employee" include, (a) primary management duties, (b) authority or significant influence over hiring, firing, or promoting, (c) regular exercise of discretion, (d) supervision over others' work. *Id.* § 551.204(a). There is no explicit requirement to pay an executive employee on a salary basis, and consequently no provision addressing

OPM's regulation is a proper construction of FLSA that is owed deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

## DISCUSSION

When Congress expanded FLSA's coverage to include federal employees, OPM [4] was given responsibility to administer the act with respect to most federal employees (subject to certain exceptions not relevant here):

> Notwithstanding any other provision of this chapter, or any other law, the Director of the Office of Personnel Management is authorized to administer the provisions of this chapter with respect to any individual employed by the United States....

29 U.S.C.A. § 204(f). The Federal Circuit has held that "administering" includes "the power to interpret the statute and to set forth the guidelines and policies of the agency." *Zumerling v. Devine,* 769 F.2d 745, 750 (Fed.Cir.1985). Accordingly, it is clear from the plain language of the statute that OPM is empowered to administer FLSA with respect to plaintiffs.

Plaintiffs, however, argue that OPM's power to administer FLSA is limited in one critical respect. They argue that Congress intended that OPM always construe FLSA by taking its lead from the DoL. That is, DoL's regulations control whenever the two agencies' implementations of FLSA are at odds. Thus, according to plaintiffs, DoL's regulations control here notwithstanding the statutory language because OPM's regulations are inconsistent with DoL's regulations.

In support of their position, plaintiffs cite *American Federation of Government Employees v. OPM,* 821 F.2d 761 (D.C.Cir.1987) ("*AFGE* "), which invalidated an OPM regulation that presumptively exempted from FLSA's overtime requirements federal employees classified at GS–11 or above, as well as an OPM regulation defining "executive" employee that did not require the "executive" employee to "customarily and regularly" direct the work of others. *Id.* at 771. The court held that OPM's regulation was inconsistent with FLSA and vacated it:

> Since the presumption [of exemption for GS–11s and above] appears to guide or direct the agency to act inconsistently with FLSA and places an unwarranted and, at minimum, confusing burden on the employee, [the regulation] is flawed and must be vacated as inconsistent with the 'meaning, scope, and application' of the FLSA.

*Id.* In concluding that there was a requirement for consistency, the court relied on legislative history to the 1974 amendments to FLSA indicating that Congress wanted OPM to exercise its administrative powers consistently with DoL:

> the [OPM] will administer the provisions of the [FLSA] in such a manner as to assure consistency with the meaning, scope, and application established by the rulings, regulations, interpretations, and opinions of the Secretary of Labor which are applicable in other sectors of the economy.

*Id.* at 769 (*quoting* Fair Labor Standards Amendments of 1974, H.R. Rep. 93–913 at 28 (1974), *reprinted in* 1974 U.S.C.C.A.N. 2811, 2837–38) ("House Report").

The law of this circuit is similar. Explaining that the proper standard is whether "OPM's interpretive guidelines 'harmonize with the statute's origin and purpose,' ... as well as with the Secretary of Labor's regulations," the Federal Circuit upheld the method OPM used to calculate overtime for firefighters as consistent with FLSA and the DoL regulations. *See Zumerling,* 769 F.2d at 750. Applying these standards, this court has also invalidated OPM regulations which impermissibly strayed from FLSA, as measured by their deviation from DoL regulations. *See Adams v. United States,* 36 Fed. Cl. 91, 97 (1996).

However, this court has also made it clear that not every inconsistency is fatal to OPM's regulations. "It would be inappropriate ... to elevate a statement in the committee report to an ironclad rule barring any inconsis-

---

the effect of disciplinary penalties on an employee's salaried status. *Id.; see also Federal Personnel Manual Letter* 551-7 (1975).

**4.** At the time, OPM was known as the Civil Service Commission.

tency. Congress knows how to expressly limit grants of authority." *Riggs v. United States*, 21 Cl.Ct. 664, 681 (1990). Indeed, a perfect mesh between Title 5 and Title 29 cannot be expected or required. *See Abreu v. United States*, 22 Cl.Ct. 230, 238 (1991), *aff'd*, 948 F.2d 1229 (Fed.Cir.1991). Instead, the inquiry must begin and end with the statute. Adverting to the DoL regulations as presumptively the proper interpretation still leaves room for non-identical regulations for federal employees, where justified. As the court wrote in *Adams*, 36 Fed.Cl. at 97, "[t]he best evidence of that intent [the meaning of the statute] is found in the DOL regulations," but in that case the government "had not justified a contrary practice for federal employees." *Id.*

The beginning and ending question is thus: Is OPM's regulation defining the executive exemption impermissibly inconsistent with FLSA? According to plaintiff, OPM's regulation must be invalidated (and DoL's regulation applied) because an employee who would remain non-exempt under DoL's regulations by virtue of the disciplinary-deduction rule, 29 C.F.R. § 541.118(a), would be exempted from FLSA's overtime requirements under the OPM regulations, which do not contain a salary basis test or a disciplinary deduction rule.

The court notes at the outset that while it is true that the disciplinary-deduction rule of DoL's salary basis test would be fatal to exemption in this case, it does not necessarily follow that OPM's regulations would reach a different result if applied to plaintiffs. Insofar as relevant here, the OPM and DoL regulations defining the executive exemption are similar in most respects. Both look to the whether the employee has duties that are primarily management in nature, whether the employee supervises others, whether the employee has hiring or firing authority, and the degree of discretion the employee regularly exercises. *Compare* 5 C.F.R. § 551.204 *with* 29 C.F.R. § 541.1. Indeed, plaintiffs' alternative argument is that, even absent the disciplinary-deduction rule, they are exempt under OPM's own regulations.

Plaintiffs assert, however, that the issue was definitively resolved in their favor by *Auer v. Robbins*. Plaintiffs are incorrect. *Auer* did not address the issue before the court, which is whether OPM's regulations are inconsistent with FLSA because they failed to include a salary-basis test or disciplinary-deduction rule. Instead, *Auer* involved a straightforward *Chevron* analysis of DoL's own regulations applied to entities entirely and solely within DoL's jurisdiction. *See* 519 U.S. at ——, 117 S.Ct. at 909. Moreover, the Court in *Auer* never mandated a salary basis test by either the DoL or OPM, but merely extended the customary deference to DoL's regulations: "Because the FLSA entrusts matters such as this to the Secretary, not the federal courts, we cannot say that the disciplinary-deduction rule is invalid as applied to law-enforcement personnel." *Id.* at ——, 117 S.Ct. at 910. In addition, the Court agreed that applying private-sector standards to the public sector might pose potential Administrative Procedure Act problems:

> The more fundamental objection respondents have to the disciplinary-deduction rule is a procedural one: The Secretary has failed to give adequate consideration to whether it really makes sense to apply the rule to the public sector. Respondents' *amici* make the claim more specific: The Secretary's failure to revisit the rule in the wake of our *Garcia* decision was "arbitrary" and "capricious" in violation of the Administrative Procedure Act.
>
> . . . .
>
> It is certainly true that application of the disciplinary-deduction rule to public-sector employees raises distinct issues that may warrant the Secretary's formal consideration; this much is suggested by the veritable flood of post-*Garcia* litigation against public employers in this area. But respondents' complaints cannot be raised in the first instance in the present suit.

*Id.*

This concern is doubly applicable here, where plaintiffs' argument would put the Secretary of Labor in a position of indirect rulemaking (indirect because DoL rules were promulgated for DoL constituents, not OPM constituents). Caution dictates against simply importing DoL-created standards into

the federal sector without any conscious rule-making at either DoL or OPM. Moreover, as previously indicated, OPM rules may legitimately deviate from DoL rules if the government can justify a contrary practice. *See Adams*, 36 Fed.Cl. at 97.

Under the civil-service system covering the great majority of federal employees, pay is calculated from an *annual* rate of basic pay irrespective of the whether an employee is "labor" or "management." *See* 5 U.S.C.A. § 5332 (1996); *see also* 5 U.S.C.A. § 5101 (1996) (stating that federal "position-classification system can be used in all phases of personnel administration"). Using a salary-basis test in this environment as an indicia of "executive" position has an enormous potential for quixotic results because unskilled employees and management alike are paid an annual salary according to the General Schedule. *See* 5 U.S.C.A. § 5104 (1996). In other words, the salary-basis test would not meaningfully distinguish between, on the one extreme, unskilled federal employees, and on the other extreme, upper federal management. It is not surprising, therefore, that OPM focuses on the work actually being done by the exempt employee, rather than on the peculiarities of the federal government's pay mechanism.

In addition, as the government points out, numerous statutes and regulations subject federal employees across the board to suspension for misconduct. Federal employees of virtually any grade may be suspended under Chapter 5 of Title 5 of the United States Code. Subchapter I, 5 U.S.C. §§ 7501–04, permits suspensions of fourteen days or less "for such cause as will promote the efficiency of the service (including discourteous conduct to the public.... )" *Id.* 7503. Subchapter II, 5 U.S.C. §§ 7511–14, allows removal, suspensions of more than fourteen days, reductions in pay, or furlough for thirty days or less "only for such cause as will promote the efficiency of the service." *Id.* § 7513. Subchapter VI, 5 U.S.C. §§ 7531–33, allows the head of an agency to suspend without pay any employee of his agency when he considers that action necessary in the interests of national security. *Id.* § 7532. Subchapter V, 5 U.S.C. §§ 7541–43, applies to the suspension or removal of career senior executive service employees, and permits suspensions of more than fourteen days for a variety of reasons including misconduct and neglect of duty. *Id.* § 7543.

The offenses for which an employee may be disciplined (including by suspension) are legion, as a cursory scan of agency regulations reveals. For example, the Office of Government Ethics prescribes standards of good conduct that all government employees must follow. *See, e.g.,* 5 C.F.R. pt. 2635 (1997). Fourteen "basic obligations of public service" are enumerated in 5 C.F.R. § 2635.101, including requirements that employees "put forth honest effort in the performance of their duties," "not use public office for private gain," and "disclose waste, fraud, abuse, and corruption." In addition, specific rules govern receipt of gifts from outsiders, gifts between employees, conflicting financial interests, impartiality in performing official duties, seeking other employment, misuse of position and government property, and so forth. An employee who violates any of these provisions is subject to discipline. *Id.* § 2635.106.[5] Some of the regulations, such as those pertaining to financial disclosure, are specifically directed at high-ranking government officials. *See* 5 C.F.R. § 2634.104. An employee who violates these regulations can be suspended. *See* 5 C.F.R. § 2634.701(d). The government also cites a statute of general applicability that imposes a minimum suspension of thirty days for the unauthorized use of a government vehicle. *See* 31 U.S.C. § 1349(b). This reticulate mass of statutory and regulatory law expressly contemplating suspensions for even high-level government employees is further evidence that DoL's disciplinary-deduction rule is not at home in the federal arena.

---

**5.** In addition to regulations that affect federal employees government-wide, individual agencies have promulgated standards of conduct governing their employees. *See, e.g.,* 17 C.F.R. pt. 140 (Commodities Futures Trading Commission); 28 C.F.R. pt. 45 (Dep't of Justice); 31 C.F.R. pt. 0 (Dep't of Treasury); 45 C.F.R. pt. 73 (Dep't of Health and Human Services); 47 C.F.R. pt. 19 (Federal Communications Commission).

Plaintiffs acknowledge the existence of these laws, but argue that the government can manipulate the length of suspensions to avoid FLSA liability—the government is free to suspend executives in exact intervals of pay periods without losing the exemption. *See* 29 C.F.R. § 541.118 (stating that "the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any work-week in which he performs no work"). Although theoretically possible, plaintiffs' approach does violence to the principle that the punishment fit the crime. *See Shelly v. Department of Treasury*, 75 M.S.P.R. 677, 682 (1997) ("the most significant factor [in determining a punishment] is the nature of the offense itself"). For instance, misconduct that would merit a three-day suspension would either have to be reduced to a reprimand or increased to a fourteen-day suspension. Nothing in FLSA or its legislative history indicates that Congress intended this bizarre result.[6]

Finally, plaintiffs' argument thwarts the compromise reached in Congress, namely that OPM would administer FLSA. That compromise was considered necessary because of the perception that concurrently administering two sets of laws would result in confusion. *See Zumerling*, 769 F.2d at 749–50. Indeed, this court has commented on the uneasy relationship between FLSA and the civil service system. *See Abreu*, 22 Cl.Ct. at 232, 238. To alleviate potential confusion, Congress expressly carved out a jurisdictional role for OPM over most federal employees. *See* 29 U.S.C. § 204(f); *see also* House Report, 1974 U.S.C.C.A.N. at 2837. It is contrary to Congress's expressed wish to undermine that compromise by requiring

OPM to precisely mimic DoL's every regulatory move.

This court has previously observed the tension between the legislative history of FLSA and the plain meaning of the statute. *See Riggs*, 21 Cl.Ct. at 681. As discussed above, the reading of FLSA urged by plaintiffs, namely, that OPM must include a salary basis test and disciplinary deduction rule in its regulations, makes little sense in the federal sector. Moreover, Plaintiffs' interpretation of FLSA ignores the clear statutory mandate that OPM administer FLSA with respect to federal employees, and leads to "'absurd or futile results ... plainly at variance with the policy of the legislation as a whole,' which this Court need not and should not countenance." *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 120, 108 S.Ct. 1666, 1674, 100 L.Ed.2d 96 (1987) (internal quotes and cites omitted). Simply put, there is no good reason to require OPM to include in its regulations DoL's salary-basis test or the disciplinary-deduction exception to the salary-basis test.

*The Government's Motion*

Aside from its conclusory Proposed Finding of Fact # 4, the government has offered no evidence to discharge its burden of establishing that plaintiffs are employees exempt from FLSA's overtime provisions. The court may not presume that plaintiffs are exempt; rather, the government must prove that they "plainly and unmistakably fall 'within the terms and spirit of the exemption....'" *Baca v. United States*, 29 Fed.Cl. 354, 359 (1993) (citation omitted). The government's cross-motion for summary judgment is accordingly denied.

## CONCLUSION

For the reasons stated above, the parties' cross-motions for summary judgment are

---

**6.** Plaintiffs also attack this argument on the ground that "Congress' bare authorization of suspensions as an option" does not constitute an "actual practice" of imposing suspensions sufficient to defeat the executive exemption. However, *Auer* clarified that an otherwise exempt employee can lose his exempt status where it is "substantially likely" that suspensions will be imposed for violating prescribed norms of conduct. *See* 519 U.S. at ——, 117 S.Ct. at 911.

And a perusal of Merit Systems Protection Board adjudications demonstrates that federal employees are regularly disciplined, including by suspension, for conduct proscribed by the statutes and regulations discussed above. Plaintiffs' suggestion that agencies could avoid overtime by choosing between either not enforcing discipline, or else by tailoring discipline to have suspensions coincide with full pay periods would create an absurd result.

both denied. Plaintiffs are granted leave to amend their complaint to include Mr. Norbert Gomez. *See supra* note 1. The parties are directed to confer and file a joint status report on or before February 27, 1998, proposing further pretrial proceedings.