Fernando BLANCO, et al., Plaintiffs,

v.

UNITED STATES of America, et al., Defendants.

Civ. No. 00–2208(SEC).

United States District Court, D. Puerto Rico.

May 17, 2006.

Victoria A. Ferrer–Kerber, San Juan, PR, for Plaintiffs.

Fidel A. Sevillano, United States Attorney's Office, Torre Chardon, Hato Rey, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, Senior District Judge.

Pending before the Court is Defendants' renewed consolidated motion to dismiss and motion for summary judgment (Dock-

et # 25).[1]  Plaintiffs have filed an opposition and cross motion for summary judgment (Docket # 28).  Defendants filed an opposition to Plaintiffs' cross motion and replied to Plaintiffs' opposition (Docket # 32) and Plaintiffs sur-replied (Docket # 37).  After carefully examining the parties' arguments, the case record and the applicable law, Defendants' motion for summary judgment will be **GRANTED** and Plaintiffs' cross motion will be **DENIED.**

## Factual Background

Plaintiffs are current and former employees of the Federal Bureau of Prisons ("BOP") Metropolitan Detention Center, in Guaynabo, Puerto Rico ("MDC").  At issue in this case is whether or not they were fully and properly compensated for the entire period of time that they were restricted to the MDC during the time Hurricane Georges passed over the island of Puerto Rico, in September of 1998.

During the morning of September 20, 1998, a hurricane warning was issued for the island of Puerto Rico. At approximately 6:00 a.m. that morning, MDC Warden González opened the institution command center at the facility to monitor the progress of Hurricane Georges.  In addition to opening the institution command center, Warden González activated the family center at the MDC visiting room.  When the Warden opened the command center and family center, Hurricane Georges was located approximately 85 miles from Puerto Rico, and had maximum sustained winds of 110 miles-per-hour.

By 2:00 p.m. the following day, Monday, September 21, 1998, the situation had shown no improvement.  As such, at approximately 4:00 p.m., Warden González declared an emergency.  The staff was informed of the state of emergency both orally and by written memorandum, which stated:

> [d]ue to the emergency situation and the safety of all staff, no one will be allowed to leave the institution until further notice.  Hurricane Georges' winds are projected to exceed 110 mph and will reach the island within the next couple of hours.  Also, since some staff might not be able to reach the institution due to the above-mentioned situation, it is necessary for all staff to remain at the institution to assist the relieving posts.  If you have any questions, please follow your chain of command through your respective Associate Warden

Pursuant to these orders, staff present at the institution were restricted to the institution for their own safety, and to ensure the continued safe and orderly operation of the institution, in the event that other staff members were unable to reach the premises.  Staff and their families were provided with food, and when they were not assigned to work a post, staff were encouraged and expected to sleep in an empty housing unit designated for this purpose.  Some of the staff decided to stay in the empty housing unit, others remained

---

1.  This motion was originally filed on July 11, 2001.  Then, on March 18, 2002, the Court issued an Opinion and Order holding that the arbitration and grievance process set forth in Plaintiffs' collective bargaining agreement to attend to Plaintiffs' FLSA claims divested the Court from subject matter jurisdiction.  Accordingly, the Court dismissed Plaintiffs' claims for lack of jurisdiction.  *See* Docket # 47.  Plaintiffs appealed the Court's decision to the United States Court of Appeals for the Federal Circuit.  There, in light of recent case law, the appellate court vacated this Court's previous order and remanded the case for further proceedings. *See* Docket # 53.  Defendants, and Plaintiffs alike, then moved the Court to reinstate their previous filings and the Court granted their request.  *See* Docket # 62.

with their families in the family center, and the rest of the staff chose to sleep in their particular departments.

Although the memorandum indicated that staff members would be required to assist at the relieving posts during the state of emergency, in reality the need for such assistance never materialized. As such, no staff members reported being called to duty or performing any work during their designated rest period, and the Warden deactivated the command center at approximately 7:00 p.m. on September 22, 1998.

The following day, G. Joseph Kelly Jr., the Human Resources Director of MDC, issued a memorandum to all timekeepers regarding pay for staffers who remained at the institution during Hurricane Georges. In the memorandum, Mr. Kelly explained that for Monday, September 21, 1998, the day the hurricane passed through the island, most staff would be paid for sixteen (16) hours of work (applying overtime, compensatory time, night differential, or any special pay provisions applicable). For staff members to receive pay for more than sixteen (16) hours of work, however, their supervisor would need to certify that they were: (1) instructed to perform work beyond the sixteen (16) hours, and (2) they had in fact performed such work.

The staff members and their union representation were not in agreement with the Department of Human Resources' decision. On October 13, 1998, the American Federation of Government Employees, Local 4052 Council of Prisons Local ("Union"), submitted a grievance to Robert L. Matthews, the Regional Director for the Southeast Regional Office of the BOP. In its grievance, the Union complained that during the hurricane they were restricted to MDC and expected to remain in a state of readiness. This, the Union believed, entitled its members to standby pay under

5 C.F.R. § 551.431. Finding that the employees had been properly compensated for the time period in question, the Regional Director denied the grievance.

Dissatisfied with the director's decision, and in accordance with the Collective Bargaining Agreement between the Union and BOP, the staffers submitted the issue to a voluntary binding arbitration proceeding. On June 30, 1999, Arbitrator Mona Miller issued a decision in the matter of the Union's grievance. In her decision, the arbitrator found that:

> Staff who were held in the institution beyond their twelve hour shift were paid for eight hours of regular duty, four hours of overtime, and four more hours of overtime for what the warden considered as standby time in order to compensate them to the limit allowed by regulation. The record shows the Agency was prepared to compensate the staff who actually worked beyond the sixteen hours. A memo from the Human Resources Manager indicated pay would be given to any staff whose supervisor certified the staff member was "instructed to and actually performed work beyond sixteen hours." The record is devoid of any such requests. Based on the entire record the arbitrator found no violations of the contract regulations, or law.

The Union filed exceptions to the arbitrator's award with the Federal Labor Relations Authority, which were denied.

After exhausting all administrative avenues, on September 19, 2000, Plaintiffs filed the above-captioned suit. Plaintiffs' first cause of action in the amended complaint alleges that Defendants have willfully and purposefully violated the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), by failing to fully and fairly compensate them for the time period involving the passage of Hurricane Georges over the island of Puerto Rico. Plaintiffs'

second cause of action alleged that Defendant Office of Personnel Management ("OPM"), by enacting the regulation concerning deductible sleep time, 5 C.F.R. § 551.432, violated the Administrative Procedure Act, 5 U.S.C. § 706(2)(a) ("APA"). Plaintiffs believe that the OPM's regulation concerning deductible sleep time is inconsistent with the Department of Labor ("DOL") regulation on that same issue, 29 C.F.R. § 785.22; and therefore, "not in accordance with the law."

In turn, Defendants filed a consolidated motion to dismiss and motion for summary judgment. In their motion, Defendants make the following arguments: (1) since Plaintiffs were offered appropriate accommodations, were not expected to respond to emergencies, were not interrupted during sleep time and would have been paid for hours worked upon making a showing that they had actually worked during sleep time, Defendants are entitled to judgment as a matter of law; (2) the Court lacks jurisdiction over the second count of the amended complaint because the six-year statute of limitations for a facial challenge to the OPM's regulation has elapsed; and (3) the challenged OPM regulation is not arbitrary, capricious, or otherwise contrary to law. Plaintiffs have filed an opposition to Defendants' motion and a cross-motion for summary judgment, where they argue that: (1) the challenge to the validity of the OPM regulation is not time barred; and (2) the OPM regulation is inconsistent with the DOL regulation, and is thus, contrary to law. Plaintiffs do not address, however, Defendants contention that they were given appropriate accommodations for their sleeping time and that not one of the Plaintiffs claimed to have worked during sleep time or sought payment for interrupted sleep time, pursuant to the directives set forth by the BOP Department of Human Resources.

Against this backdrop, we proceed to examine the arguments set forth by the parties. We will first address the statute of limitations argument and then discuss the validity of the OPM regulation at issue.

**Standard of Review**

**Motion for Summary Judgment**

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *NASCO, Inc. v. Pub. Storage, Inc.,* 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. *U.S. v. One Parcel of Real Prop.,* 960 F.2d 200, 204 (1st Cir.1992); *see also Boston Athletic Assn. v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989); *Medina–Muñoz v. R.J. Reynolds Tobacco,* 896 F.2d 5, 8 (1st Cir.1990) ("[a] 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir.1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra*, § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martínez v. Colón*, 54 F.3d 980, 983–84 (1st Cir.1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machs.*, 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the non-moving party's case," *Maldonado–Denis v. Castillo–Rodríguez*, 23 F.3d 576, 581 (1st Cir.1984); the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." *Lawton v. State Mut. Life Assurance Co. of Am.*, 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the nonmovant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue.... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States*, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina Muñoz*, 896 F.2d at 8, (*quoting Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

## Motion to Dismiss

In assessing whether dismissal for failure to state a claim is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir.1998) (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *quoted in Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). *See also Correa–Martínez v. Arrillaga–Beléndez*, 903 F.2d 49, 52 (1st Cir. 1990) (dismissal for failure to state a claim is warranted "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.").

But "[a]lthough this standard is diaphanous, it is not a virtual mirage." *Berner v.*

*Delahanty,* 129 F.3d 20,25 (1st Cir.1997) (*quoting Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988)). In order to survive a motion to dismiss, "a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.' " *Id.*

In judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." *LaChapelle,* 142 F.3d at 508 (*quoting Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir. 1996)). *See also Rogan v. Menino,* 175 F.3d 75, 77 (1st Cir.1999). Moreover, Courts "will not accept a complainant's unsupported conclusions or interpretations of law." *Wash. Legal Found. v. Mass. Bar Found.,* 993 F.2d 962, 971 (1st Cir. 1993).

### Applicable Law and Analysis

Congress enacted the FLSA in 1938 as a remedial statute because the free market failed to adequately protect workers from exploitive conditions. 29 U.S.C. § 202(b). The FLSA's minimum wage and overtime provisions aim to protect low-end wage earners in particular from substandard wages and excessive hours. The expressed intent of the FLSA is to eliminate "labor conditions detrimental to the minimum standard of living necessary for the health, efficiency, and general well-being of workers." 29 U.S.C. § .202(a); S.Rep. No. 75–884, at 3–4 (1937); *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706–707 n. 18, 65 S.Ct. 895, 89 L.Ed. 1296 (1945).

In 1974, Congress amended the FLSA to bring federal employees under the FLSA provisions. *See* Fair Labor Standards Amendments of 1974, Pub.L. No. 93–259, 88 Stat. 55 (1974); 29 U.S.C.

§ 203(e)(2)(A). Accordingly, while the DOL is charged with the administration of the FLSA for employees in the private sector and non-federal employees, Congress granted the OPM authority to administer the FLSA for federal employees. 29 U.S.C. § 204(f). As a general rule, the FLSA establishes that federal employees must be compensated at a rate not less than one and one-half times their regular rate for all overtime hours. 29 U.S.C. § 207(a)(1). The FLSA further defines overtime as employment in excess of 40 hours in a single workweek. *Id.* Notwithstanding, the OPM has enacted regulation which delineates the payment of work hours in specific circumstances, such as when an employee is required to stay at work for a 24–hour period. The validity and applicability of regulation alike is the source of the instant dispute.

### A. Time Barred

■ Defendants' first argument for dismissal is that Plaintiffs' challenge to the validity of the OPM regulation is time barred pursuant to 28 U.S.C. § 2401(a), as it is a facial challenge to a regulation published in the Federal Register more than six (6) years before the commencement of this suit. Plaintiffs counter that: (1) since Plaintiffs claim to have been harmed by the application of the challenged regulation within the statutory period their claim is not time barred, and (2) the limitations period referred to above applies to procedural challenges and not substantive challenges such as the instant one. We agree with Plaintiffs in that their claim is not time barred.

■ Section 2401(a) is a general statute of limitations for actions against the United States. Specifically, it provides that "every action commenced against the United States shall be barred unless the complaint is filed within six years after the

right of action first accrues." 28 U.S.C. § 2401(a). This statute of limitations applies to actions brought under the APA. *See Trafalgar Capital Assocs., Inc. v. Cuomo*, 159 F.3d 21, 34 (1st Cir.1998) (citations omitted); *Water Keeper Alliance v. U.S. Dept. of Defense*, 152 F.Supp.2d 163, 170–71 (D.P.R.2001) (citation omitted); *Wind River Mining Corp. v. United States*, 946 F.2d 710, 713–14 (9th Cir.1991) (*citing Sierra Club v. Penfold*, 857 F.2d 1307, 1315 (9th Cir.1988); *Shiny Rock Mining Corp. v. United States*, 906 F.2d 1362, 1364 (9th Cir.1990)). Accordingly, pursuant to First Circuit case law, a cause of action under the APA accrues when the person challenging the administrative action "can institute and maintain a suit in court." *Trafalgar Capital Assocs.*, 159 F.3d at 35 (*quoting Spannaus v. DOJ*, 824 F.2d 52, 56 (D.C.Cir.1987)). That is, when there has been a "final agency action." *Id.* To determine whether there has been a final agency action, the Court must examine whether the agency has finished the decision making process and whether the result of that process will directly affect the parties. *Id.* As such, in order for a decision to be final, within the meaning provided above, the decision must have a direct and immediate consequence upon the injured party.

In a similar vein, courts have held that the Section 2401(a) six-year statute of limitations does not bar a challenge of an agency's action when the affected party claims that the agency exceeded its statutory authority. *See Wind River Mining Corp.*, 946 F.2d at 714–15 (string citations omitted). In reaching this conclusion, courts have distinguished between procedural challenges and substantive challenges. If the challenge is procedural the claim must be brought within six years of the publication of the regulation. *Dunn–McCampbell Royalty Interest, Inc.*, 112 F.3d 1283, 1287 (5th Cir.1997) (string cita-

tions omitted). Examples of procedural challenges are a challenge to a mere procedural violation or error in the adoption of a regulation or an agency action (e.g. a fault in the process of notice and comment), or a policy-based facial challenge to the government's decision (i.e. to challenge the wisdom of a governmental policy). *See Wind River Mining Corp.*, 946 F.2d at 714–15 (stating that "[t]he grounds for such challenges will usually be apparent to any interested citizen within a six-year period following promulgation of the decision.") However, when the challenge to the agency decision is substantive, it may be brought within six years of the "application of the decision to the particular challenger." *Id.* at 716 (stating that such a challenge may be initiated upon the adverse application of the agency decision to the particular challenger); *see also Natural Resources Defense Council v. Nuclear Regulatory Commission*, 666 F.2d 595, 602–04 (D.C.Cir.1981) (distinguishing between a procedural challenge and a challenge on substantive invalidity grounds). "[T]o sustain such a challenge, however, the claimant must show some direct, final agency action involving the particular plaintiff within six years of filing suit." *Dunn–McCampbell Royalty Interest, Inc.*, 112 F.3d at 1287. Therefore, "an agency's application of a rule to a party creates a new, six-year cause of action to challenge [ ] the agency's constitutional or statutory authority." *Id.*

In this Court, Plaintiffs question the validity of the agency regulation, which they believe unlawfully deprived them of wages owed. Plaintiffs' legal theory can be characterized as follows. The BOP deducted eight (8) hours of sleep time from each of the Plaintiffs' pay for the period of September 21 through September 22, 1998, when the Plaintiffs remained on the premises of MDC because of Hurricane Geor-

ges. Accordingly, although the regulation which authorized such a payment deduction (discounting sleep time from payment absent an express or implied agreement between the employee and employer), 5 C.F.R. § 551.432, was enacted and published more than six years prior to the filing of the instant action, Plaintiffs were not directly affected by the application of this regulation until September 1998. Because Plaintiffs aver that the OPM lacked statutory authority to enact and apply such a regulation, the challenge brought only two (2) years after the application of the agency regulation is not time barred. Per the case law discussed above, Plaintiffs' is a substantive challenge and is not time barred. Accordingly, Defendants' contention on this respect is **DENIED.**

## B. Validity of 5 C.F.R. § 551.432

The heart of Plaintiffs' claim in this Court is whether the OPM had statutory authority to enact a regulation allowing the deduction of sleep time from payment absent an implied or express agreement between the BOP and Plaintiffs. Plaintiffs anchor their claim in their contention that to the extent that the OPM regulation is inconsistent with a similar DOL regulation, the OPM exceeded its statutory authority under the FLSA and the regulation is therefore invalid.

The OPM regulation at issue here states:

(a) Except as provided in paragraph (b) of this section, bona fide sleep time that fulfills the following conditions shall not be considered hours of work if:

(1) The work shift is 24 hours or more;

(2) During such time there are adequate facilities such that an employee may usually enjoy an uninterrupted period of sleep; and

(3) There are at least 5 hours available for such time during the sleep period.

(b) For employees engaged in law enforcement or fire protection activities who receive annual premium pay under 5 U.S.C. 5545(c)(1) or (2), the requirements of paragraph (a) of this section apply, except that on-duty sleep time may be excluded from hours of work only if the work shift is more than 24 hours.

(c) The total amount of bona fide sleep and mean time that may be excluded from hours of work may not exceed 8 hours in a 24–hour period.

(d) If sleep time is interrupted by a call to duty, the time spent on duty is considered hours of work.

(e) On-duty sleep and meal time during regularly scheduled hours for which standby duty premium pay under 5 U.S.C. 5545(c)(1) is payable may not be excluded from hours of work.

(f) For firefighters compensated under 5 U.S.C. 5545b, on-duty sleep and meal time may not be excluded from hours of work.

5 C.F.R. § 551.432.

Plaintiffs take exception to the cited regulation, and contend that, pursuant to the decision of *AFGE v. OPM,* 821 F.2d 761 (D.C.Cir.1987), the OPM regulation must be applied consistently with the analogous DOL regulation, which requires that in order for sleep time to be deducted from employee's pay, there must be an express or implied agreement with the employees that this can be done. The DOL regulation to which Plaintiffs refer to is codified in 29 C.F.R. § 785.22, and states:

(a) General. Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly sched-

uled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked (string citations omitted).

(b) Interruptions of sleep. If the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked. If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted. For enforcement purposes, the Divisions have adopted the rule that if the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time (citation omitted).

29 C.F.R. § 785.22. Plaintiffs further assert that since there was no express or implied agreement that sleep time could be deducted from their pay, as provided for in the DOL regulation, the BOP did not have the authority to deduct the eight (8) hours of wages from the time period they were allotted to sleep.

■ The FLSA is silent on the issue at hand, to wit, whether there must be an agreement between employer and employee in order to exclude sleep time from compensation. It is well settled, however, that "[w]hen Congress has 'explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation' and any ensuing regula-

tion is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." *United States v. Mead Corp.,* 533 U.S. 218, 227, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) (*quoting Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694) (other citations omitted). Thus, it is reasonable to conclude that both the DOL and OPM are each respectively charged with the authority to administer the FLSA and regulate the payment of sleep time accordingly. The DOL for private and non-federal employees and the OPM for federal employees. *See* 29 U.S.C. §§ 203(e)(2)(A) & 204(f)[2]; *Zumerling v. Devine,* 769 F.2d 745, 750 (Fed.Cir.1985). Moreover, there can be little doubt that the delegation of authority to the OPM includes the authority to issue substantive regulations which are binding on federal employees. *Riggs v. United States,* 21 Cl.Ct. 664, 680–81(1990); *Adams v. United States,* 40 Fed. Cl. 303, 304 (1998); *AFGE,* 821 F.2d at 770 (concluding that "Congress contemplated OPM would exercise its administrative authority by engaging in the common agency practice of issuing substantive rules."). Given Congress's failure to include any express language **in the statute** whereby OPM's delegated authority would have been subordinated to the authority of the DOL, we must conclude that OPM's authority to regulate stands on equal grounds as that of the DOL.

Having said this, however, we note that Plaintiffs' challenge to the OPM regulation relies mainly on the legislative history of the FLSA 1974 amendments in which the Congressional Report stated that: "[the

---

**2.** The statute provides: "Notwithstanding any other provision of this chapter, or any other law, the Director of the Office of Personnel Management is authorized to administer the provisions of this chapter with respect to any individual employed by the United States." 29 U.S.C. § 204(f).

OPM] will administer the [FLSA] in such a manner as to assure consistency with the meaning, scope, and application established by the rulings, regulations, interpretations, and opinions of the Secretary of Labor which are applicable in other sectors of the economy." *Adams v. United States*, 36 Fed.Cl. 91, 95 (1996)(*quoting* H.R.Rep. No. 913, 93d Cong., 2d Sess. 28 (1974), *reprinted* in 1974 U.S.C.C.A.N. (88 Stat.) 2837). While some courts have used this language to invalidate certain OPM regulations at odds with their counterpart DOL regulations, other courts have found that it would be a mistake to require that OPM regulations mimic, or be identical to, the DOL regulations. Instead, the latter have interpreted the Congressional Report's language to require that DOL regulations be used as **guidance** for the interpretation of OPM regulations and that these should be consistent with, **albeit not necessarily identical to,** their DOL counterpart. *See e.g., Id.* at 95–97 (citations omitted) (holding that the OPM's interpretation of the FLSA should be consistent with the DOL's interpretation and that only when the OPM interpretation is inconsistent with the intent of statutory provisions and the government fails to justify a contrary practice for federal employees, we should look at and apply DOL regulations); *Adam v. United States*, 26 Cl.Ct. 782, 786 (1992) (citations omitted); *Riggs*, 21 Cl.Ct. at 680–83; *Adams v. United States*, 40 Fed.Cl. at 306–07; *Aamold v. United States*, 39 Fed.Cl. 735, 739 n. 4 (1997) (citing with approval cases that hold that DOL regulations will serve to guide the court's interpretation of OPM regulations but will not be controlling); *Berg v. United States*, 49 Fed.Cl. 459, 472 n. 8 (2001) (same). Applying the latter view appears appropriate in this case.

A cursory review of the regulations at issue reveal that the OPM regulation is sufficiently similar to its DOL counterpart.

Both the OPM and DOL regulations provide that during a shift of 24 four hours or more, when appropriate accommodations are given to the employee and at least 5 hours of sleep have gone uninterrupted, the employer may deduct said time from compensation. *Compare* 5 C.F.R. § 551.432(a); 29 C.F.R. § 785.22(a)(b). These regulations also provide that only a maximum of 8 hours of sleep time can go uncompensated. *Id.* The **only** difference between these two regulations is then that the DOL requires an express or implied agreement between the employer and employee prior to deducting sleep time from compensation. This difference does not, to the best of the Court's understanding, justify the invalidation of the OPM regulation enacted pursuant to the authority delegated by Congress. Let's see.

The DOL regulation, 29 C.F.R. § 785.22, was inspired, in part, by the 1944 U.S. Supreme Court case *Skidmore v. Swift*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). In that case, the U.S. Supreme Court held that time spent eating or sleeping is not necessarily compensable under the FLSA. *Id.* at 139, 65 S.Ct. 161. In so doing, the U.S. Supreme Court stated that rarely interrupted sleep time when the time could be used for private purposes and adequate and comfortable accommodations have been provided, may be non-compensable time, even when the employee is required to stay at work. *Id.* Following this lead, the DOL regulation, as enacted, only requires an implied agreement between employer and employee in order to be able to deduct sleep time. 29 C.F.R. § 785.22(a). Upon examining past court interpretations of this DOL regulation, we have found that the courts have been extremely liberal in their interpretation of the type of implied agreement that is required under 29 C.F.R. § 785.22. For example, they have found that the existence

of a employer's policy deducting sleep time, and the employees' acquiescence to the same, is enough to find an implied agreement. Furthermore, the fact that an employee, while knowing of the policy, continues to work and receive payment indicates the existence of an implied agreement. *See e.g. Brigham v. Eugene Water & Electric Board,* 357 F.3d 931, 938 (9th Cir.2004)(holding that acceptance of duty shifts with prior understanding of how they were to be compensated for these shift amounts to an express agreement that sleep time will not be compensated and that the fact that an employee continues to work under the terms of employment when there is a work policy that sleep time is not compensable is the equivalent of a valid implied agreement); *Hendricks v. Oklahoma Production Center Group Homes, Inc.,* 159 Fed.Appx. 875, 878 (10th Cir.2005) (when an employee knows an employer's policy and practice of not paying for sleep time, he has acquiesced to not being paid for said time should he continue to work there); *Braziel v. Tobosa Developmental Services,* 166 F.3d 1061, 1063–64 (10th Cir.1999). Thus, it cannot be said that the DOL regulation, as interpreted by the courts, is irreconcilable or completely at odds with the OPM regulation which disposes of the need for an agreement. This is so, especially in light of the fact that 5 C.F.R. § 551.432 was enacted by the OPM in 1980. That is, for almost 20 years, MDC employees worked with the knowledge, albeit a constructive one, that this regulation existed and that sleep time would be deducted from pay when the conditions set forth in Section 551.432(a) were met. Notwithstanding the foregoing, even if we were to find that these two sets of regulations are different to the point of inconsistency, this does not require the invalidation of said OPM regulation.

A slight difference between OPM and DOL regulations does not warrant abrogation of Congress's delegated authority to OPM to administer the FLSA for federal employees. For the opposite premise, Plaintiffs have cited the case of *AFGE v. OPM,* 821 F.2d 761 (D.C.Cir.1987). In that case, however, the D.C. Circuit Court invalidated an OPM regulation which it deemed to be fatally at odds with the overtime provisions of the FLSA. There, the Court held that the OPM regulation at issue conflicted with the FLSA principle that employees are presumed eligible for overtime. *Id.* at 771. In invalidating the OPM regulation, however, the Court expressly recognized OPM's regulatory authority and did not express a requirement that OPM regulations be identical to their DOL counterparts. Later cases have stated that the first line of inquiry to decide whether an OPM regulation is valid is whether the regulation is an impermissible construction of the FLSA. In order to reach this decision we must look at the statute itself, the delegation of authority to the OPM, the OPM regulation and its DOL counterpart for guidance.

■ In this inquiry, we ask ourselves the following questions: (1) Is the OPM regulation of sleep time impermissibly inconsistent with FLSA? (2) Are the DOL regulation and OPM regulation similar in most respects? (3) Does it make sense to apply DOL rules to federal employees? *See Adams,* 40 Fed.Cl at 306–07. In answering these questions, the Court should avoid indirect rule making by importing "DOL-created standards into the federal sector without any conscious rulemaking at either the DOL or the OPM." *Id. See also Riggs,* 21 Cl.Ct. at 680 (to determine whether the OPM regulation impermissibly deviates from the FLSA, use DOL regulations as guidance but not as a binding authority); *Adam,* 26 Cl.Ct. at 786

(stating that "in construing those regulations, the court is not barred, but rather is encouraged to consider the DOL's regulation and other interpretations of the statute. Although the OPM regulations are presumptively controlling, both sets of regulations are of value to the court.") (1992) (citations omitted).

The first question is fairly straightforward. The OPM regulation pertaining to the payment of sleep time is not inconsistent with the FLSA inasmuch as the statute is silent on the issue and time spent sleeping is not work time. The fact that the DOL has enacted a regulation permitting the deduction of sleep time in the private sector further supports the conclusion that the OPM's construction of the deduction of sleep time is consistent with the spirit and principles of the FLSA. As to the second question, whether the DOL and OPM regulations are similar in most respects, we also answer in the affirmative. The only difference between the regulations is that the OPM regulation disposes of the requirement that sleep time be deducted by agreement. However, as discussed above, this requirement of the DOL regulation has been interpreted very loosely: the mere existence of an employer's policy and the employee's knowledge of the same can be construed as an implied agreement. This slight difference between the two regulations is not sufficient to hold that these are irreconcilable. Furthermore, as previously discussed, the legislative history should not be interpreted as requiring identical results, but only consistent ones. There is no indication that if Plaintiffs were employed in the private sector that a private employer's policy to deduct sleep time would not be binding on them and would result in the deduction of sleep time from their compensation. *See Riggs*, 21 Cl.Ct. at 681 (stating that although courts have held that OPM is obliged to exercise administrative authority consistent with the DOL, "it would be inappropriate ... to elevate [the] statement in the committee report to an iron-clad rule barring any inconsistency."); *Adams*, 36 Fed.Cl. at 95–97 ("the systems need not be identical to avoid conflict.") (citations omitted); *Adams*, 40 Fed.Cl. at 306 (stating that the inquiry must begin and end with the statute and that non-identical regulations for federal employees are permissible when justified.).

A brief comment on the binding effect of a legislative history is in order. As stated by the court in *Riggs*, we echo that it is the legislative history and not the statute itself that calls for the OPM to issue regulations consistent with the DOL. Furthermore, "[a]s the Supreme Court has instructed '... the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *Riggs*, 21 Cl.Ct. at 681 (*quoting Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)). If Congress had wanted that OPM regulations to be identical to those of the DOL, Congress would have included such a command in the text of the FLSA. Absent said express language in the statute, we find that it would be contrary to Congress's own delegation of authority to the OPM to hold that its regulations need to mimic those of the DOL. *Id.* ("Congress knows how to expressly limit grants of general authority.") (*citing Consumer Prod. Safety Comm'n*, 447 U.S. at 109, 100 S.Ct. 2051); *see also, Adams*, at 40 Fed. Cl. at 308 ("It [would be] contrary to Congress's expressed wish to undermine that compromise by requiring OPM to precisely mimic DOL's every regulatory move.")

As to the third line of inquiry, namely, the Government's justification for applying

to federal employees a rule different from that applicable to private sector employees, Defendants have asserted, and we agree, that the justification rests on the number of employers required to follow the regulations. The DOL regulations apply to a multiplicity of employers. Each of these employers may, according to their particular needs and circumstances, negotiate the payment of sleep time one way or another. For example, a private sector employer could want to offer the compensation of sleep time as a part of an incentive or perk and as such, leave out the deduction of sleep time from its work policy. Accordingly, the DOL regulation has left it up to private sector employers and employees to negotiate the payment or non-payment of sleep time as it best serves their individual necessities. The OPM, on the other hand, only regulates the employment relationship of one employer, the federal government. There is therefore only one entity that need evaluate its circumstances and decide what to do regarding sleep time. That one entity, the federal government, has made its choice and decided that it will only pay sleep time when the conditions set forth in the OPM regulation are met (those that are identical to the conditions set forth in the DOL counterpart). The OPM regulation reflects and honors the federal government's choice regarding the payment of sleep time. Although that does not necessarily place the federal government at an advantage *vis-a-vis* private employers (see discussion regarding the flexible interpretation given to DOL regulation pertaining to the payment of sleep time), it is demonstrative of the essential difference between DOL and OPM: that while DOL must make allowances for the great number of employers bound by its regulations, the OPM need only deal with one employer and one set of policy decisions, thus permitting it to issue narrower regulations.

Finally, Plaintiffs make much of the fact that BOP employees in FPC Eglin, Florida who remained in the prison during the passing of Hurricane Opal in 1995 for more than 24 hours may have been paid for sleep time. To this end, Plaintiffs have submitted two affidavits of FPC Eglin employees stating that in fact they were paid without performing work. *See* Docket # 28, Exs. 5 & 6. We will not speculate as to the multiple reasons why the OPM regulation, 5 C.F.R. § 551.432, would not have been applied to deduct sleep time (e.g., sleep could have been interrupted or accommodations could have been inadequate). We are not called here to pass judgment on that situation, but on whether the OPM regulation as enacted is valid or not. As such, we find that the above-mentioned argument is of no consequence to the issue at hand.

Before concluding, we note certain uncontested facts. To date, Plaintiffs have yet to dispute in this Court that they were in fact provided appropriate accommodations during sleeping time, that they were allowed to sleep/rest for 8 uninterrupted hours, and that not one of the Plaintiffs claimed, at the time of payment, that they were entitled to more pay because they had worked during that time, as allowed by the directives of the BOP Department of Human Resources. These undisputed facts, coupled with our discussion above pertaining to the validity of the OPM regulation, support our decision today that Plaintiffs have not suffered injury as a result of the OPM regulation at issue. Accordingly, for the reasons set forth above, we find that the OPM regulation is a permissible construction of the FLSA, that the OPM had delegated authority to regulate the payment of sleep time, that its exercise of this authority was not arbitrary and capricious, *see Chevron*, 467 U.S. at 844, 104 S.Ct. 2778, and that Plaintiffs are

not entitled to damages for the deduction of sleep time from their compensation after Hurricane Georges. Defendants' motion on this respect is **GRANTED** and Plaintiffs' claims will be **DISMISSED WITH PREJUDICE.** Judgment shall be entered accordingly.

**SO ORDERED.**